Joseph MISZTAL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 75A03–9112–CR–363.

Court of Appeals of Indiana,
Third District.

Sept. 17, 1992.

Transfer Denied Nov. 12, 1992.

Susan K. Carpenter, Public Defender of Indiana and David P. Freund, Deputy Public Defender, Office of Public Defender, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana and Sue A. Bradley, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

Joseph Misztal was tried by jury and convicted of murder and voluntary manslaughter for the same homicide. The court determined that the verdicts were inconsistent and sent the jury back to reconsider. Misztal was then convicted of murder. We remand to the trial court to enter judgment according to this opinion.

## I. Facts and Procedural History.

Joseph Misztal was involved in an altercation with the victim, Alexander Dobrowolski, on July 4, 1985. During the course of the altercation Misztal shot Dobrowolski three times causing Dobrowolski's death. Misztal asked a neighbor to call the police.

When Deputy Randall Wakefield of the Starke County Sheriff's Department arrived at the scene, Misztal kicked at a .22 caliber rifle lying on the floor in Dobrowolski's living room and stated "That's the gun I shot him with." He later told an Emergency Medical Technician who arrived on the scene that "I shoot him three times, bang, bang, bang" and "I shot the son of a bitch, I killed him." When Wakefield subsequently attempted to advise Misztal of his *Miranda* rights he asked Misztal if he could understand English, Misztal replied "yeah, yeah, yeah." Wakefield felt that, although Misztal spoke "broken English", he could understand his rights. When Wakefield asked Misztal if he understood his rights, Misztal said "yes", but continued to say "I shot him! I shot him!" while Wakefield read him his rights.

Later Indiana State Police Detective James Wallace arrived. When Wallace identified himself to Misztal, Misztal stated, "I Joe Misztal. I kill him sure." Wallace advised Misztal not to say anything until he was advised of his *Miranda* rights. Wallace asked Misztal to write out his name, and then began to read Misztal his *Miranda* rights. Misztal responded by stating, "I no sign. I no understand. I kill him. That's all."

Late that evening Wallace and Starke County Prosecutor Moerlin interrogated Misztal with the assistance of a Ukranian interpreter and a Polish interpreter, both of whom had known Dobrowolski for twenty-five to thirty years. Prior to the interrogation, Wallace read Misztal his *Miranda* rights, and had the interpreters translate those rights into Ukranian and Polish. They then translated Misztal's response to the rights back to English. During the

interpretation, Misztal continued to say "I did it, I did it, I killed him." The interpreters both believed that Misztal understood the rights read to him. When they asked Misztal if he wanted a public defender, he replied "No I don't want. I have nothing to hide. I tell the truth. I want to tell." When asked if he wanted to waive his rights, Misztal said "I want to tell the truth. The whole truth. I have nothing to hide." Misztal then signed the waiver.

Misztal stated that he got into an argument with Dobrowolski over a real estate transaction. He stated that Dobrowolski began yelling that he was going to shoot Misztal, and that he shot at Misztal at least one or two times. Misztal then stated that he began to wrestle with Dobrowolski and took the gun away from him. Misztal then stated that he shot at Dobrowolski three times.

Misztal was again questioned on July 5th. Before the interview he was read his rights and signed a waiver of rights. The interview proceeded entirely in English without the use of an interpreter.

For some reason the state elected to charge Misztal with having committed both murder and voluntary manslaughter. The information alleged in two counts that Misztal had committed both forms of homicide. The jury returned a verdict finding Misztal guilty of both murder and voluntary manslaughter.

The court refused to accept that verdict and sent the jury back with a revised set of instructions which advised it that finding Misztal guilty on one count was inconsistent with finding Misztal guilty on the other count. The jury returned a verdict of guilty on the murder charge, and not guilty on the manslaughter charge. Misztal appeals this conviction.

**1.** IC 35–42–1–1 states in pertinent part that:
A person who:
(1) knowingly or intentionally kills another human being ... commits murder, a felony.

**2.** IC 35–42–1–3 states that
(a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter,

## II. Issues Presented.

Misztal presents five issues for appeal:

1) Whether the trial court erred in refusing to accept the jury's verdicts of guilty as to both murder and voluntary manslaughter.

2) Whether a verdict finding Misztal guilty of murder is in violation of the law after the state admitted that Misztal had acted under sudden heat.

3) Whether the trial court erred in refusing Misztal's tendered instruction concerning included offenses.

4) Whether the trial court erred in its statement of the law in jury instructions regarding self defense.

5) Whether the trial court erred in refusing to exclude Misztal's statements made following his being advised of his *Miranda* rights.

Based upon our decision in issue one, the second and third issues are moot.

## III. Arguments and Conclusion.

A. Refusal to Accept Original Verdict.

■ Misztal presents a challenging issue with regard to the refusal of the trial court to accept the jury's original verdict which found him guilty of both murder and voluntary manslaughter. Misztal contends that the verdicts were consistent as a matter of law, and that the trial court's failure to uphold the verdict, and subsequent decision to send the jury back to re-decide the issue violates his right to fundamental fairness and due process of law.

Misztal claims that based upon the jury instructions and the statutes regarding murder [1] and voluntary manslaughter [2], the jury's original verdict was logically consistent, plainly understandable, and not defective.

A class B felony. However, the offense is a class A felony if it is committed by means of a deadly weapon.
(b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.

An analysis of the relationship between murder and voluntary manslaughter is substantively different than that involved in most included offenses. An included offense is defined, in part, as "an offense that is established by proof of the same material elements or less than all of the material elements required to establish the commission of the offense charged" IC 35-41-1-16. Voluntary manslaughter is not established by proving less than or all of the elements of murder. It is established by proving all of the elements of murder, plus sudden heat, which is a mitigating factor, *Finch v. State* (1987), Ind., 510 N.E.2d 673. The *absence* of sudden heat is *not* an element of the crime of murder. *Id.* at 675. According to the statutory elements, these offenses parallel one another. Therefore, it is not internally inconsistent for the jury to find Misztal guilty of both murder and voluntary manslaughter unless it is made aware that the rules of double jeopardy preclude conviction of both offenses for the same homicide.

Misztal's argument is logical when the language of the statute is analyzed in conjunction with the jury instructions. Count I asked the jury to decide whether Misztal knowingly or intentionally killed Dobrowolski;[3] the jury answered in the affirmative. Count II then asked the jury to decide whether Misztal knowingly and intentionally killed Dobrowolski while acting under sudden heat; they again answered in the affirmative. Based upon the way that these counts were presented to the jury, instead of contradicting each other, they accumulated upon one another. In Count I the jury found that Misztal had knowingly or intentionally killed Dobrowolski, then in Count II it found that Misztal knowingly and intentionally killed Dobrowolski, and in addition, that he did so while acting under sudden heat.

Final instruction 15 allowed the jury to find Misztal guilty of murder in Count I and voluntary manslaughter in Count II without providing any instruction that such a finding would be in any way inconsistent. It was only after the jury returned its original verdict, finding Misztal guilty of both murder and voluntary manslaughter, that the court provided an instruction stating that finding Misztal guilty of both murder and manslaughter was "inconsistent", and told them to decide again.[4]

The state argues that the jury did not properly resolve the factual issue of whether sudden heat was present or not. This is not true. The jury did address the issue of sudden heat when it was presented to them in Count II; they found that it did exist.

The state argues that where verdicts are contradictory or logically inconsistent with the facts, those verdicts are inadequate to permit the court to pronounce judgment, citing *Hodges v. State* (1988), Ind. 524 N.E.2d 774, 788. These verdicts are logically consistent with the fact that Misztal knowingly and intentionally killed the victim (required by both counts) under the influence of sudden heat (voluntary manslaughter). If the jury had found Misztal to be guilty both of murder and reckless

---

3. The instruction given to the jury read as follows:
"Instruction No. 3:
   The defendant is charged in a two count information with the crimes of murder and voluntary manslaughter which information reads as follows....
   [O]n or about the 4th day of July 1985, [Misztal] did, in Starke County, Indiana:
   Count I: Murder
   knowingly and intentionally kill Alexander Dobrowolski ...
   Count II: Voluntary Manslaughter
   Knowingly or intentionally kill Alexander Dobrowolski while acting under sudden heat ..."
(transcript p. 230)

4. The new instruction read in whole:
"In Count I you have found the defendant guilty of Murder which was not committed in a sudden heat.
In Count II you have found the defendant guilty of Voluntary Manslaughter which was committed in a sudden heat.
These verdicts are inconsistant (sic). The defendant cannot be guilty under both counts.
You should return to your jury room, review the evidence, review the instructions and return only one verdict either guilty of murder, guilty of voluntary manslaughter or not guilty of either murder or voluntary manslaughter."
(transcript at p. 253)

homicide,[5] which requires that the jury find the actor reckless, that would have been a logically inconsistent result. The jury would then have found Misztal to be acting both knowingly or intelligently and, also, recklessly. Such inconsistency is not found in the jury's original verdict before us.

■ Misztal argues that it was improper for the trial court to refuse to accept the jury's original verdict and send the jury back to decide the issues again. We agree. A trial court may refuse to accept a jury's verdict when that verdict is "defective in substance", *Id.* at 788. Such a verdict must rise to a level where the trial court cannot understand it, and the verdict must be so uncertain on its face that no judgment can be rendered, *Roberts v. State* (1986), Ind., 500 N.E.2d 197. The jury's verdict is not to be refused out of hand, it "is to receive a reasonable construction, and is not to be avoided except from necessity" *Goodman v. State* (1919), 188 Ind. 70, 74, 121 N.E. 826.

The jury's verdict here was not defective in substance. Their verdict answers the questions asked of them, and proceeds in a logical and cumulative fashion. They were first asked if Misztal knowingly or intentionally killed Dobrowolski; they answered in the affirmative. They were then asked whether Misztal knowingly or intentionally killed under sudden heat, they again answered in the affirmative. The jury's verdicts do not negate each other, they build upon one another leading to the logical result that Misztal was found guilty of voluntary manslaughter.

This constitutes a jury decision free of defect which has a reasonable intent and is to receive its reasonable construction. For the judge to set aside that verdict is to violate Misztal's right to fundamental fairness and due process. Because we find that the two subsequent issues are not grounds for a reversal, the original verdict finding Misztal guilty of voluntary manslaughter should be entered and judgment on that verdict should proceed accordingly.

### B. Self Defense Jury Instruction.

■ An erroneous jury instruction is grounds for reversal where that instruction is "of such a nature that the whole charge of which it forms a part misleads the jury on the law of the case." *Moore v. State* (1985), Ind. 485 N.E.2d 62, 66.

■ Misztal argues that the trial court's statement of the law with regard to self defense was erroneous.[6] Misztal claims that the jury instructions erroneously require the jury to judge the reasonableness of the danger and the extent of force to be used from an objective standpoint, rather than from the defendant's standpoint.

One year prior to this case going to trial the Indiana Supreme Court stated that "[t]o prevail on a self defense claim appellant must show: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a *reasonable* fear or apprehension of death or great bodily harm." *Wade v. State* (1985), Ind., 482 N.E.2d 704, 706 (emphasis added). The supreme court's test contains an objective reasonableness standard with regard to the defender's fear of death or great bodily harm. That objective standard was clearly and adequately stated in the trial court's instructions.

The trial court's instructions are not erroneous and they do not present this court

---

5. IC 35–42–1–5
   "A person who recklessly kills another human being commits reckless homicide, a Class C felony."

6. The final jury instructions regarding self defense read as follows:
   "Instruction 15:
   One of the factors necessary to justify killing in self defense is the bona fide fear of death or serious bodily injury. But, whether or not there was such a state of mind must be found objectively in the light of the surrounding circum-

stances, and the standard for determining that issue is the reasonableness of such belief under the circumstances."
[transcript 243, 268]
"Instruction 16:
The force used to repel an attack must be reasonable and may be used only in the belief that such degree of force is necessary to defend oneself. When one is assaulted in a manner taht (sic) does not appear to threaten serious bodily injury, he may not kill in self-defense."
[transcript 244, 269]

with grounds for overturning Misztal's conviction.

### C. Knowing and Intelligent Miranda Waiver.

■ Misztal argues that since he did not make a knowing and intelligent waiver of his *Miranda* rights, the trial court erred in refusing to suppress his statements made to police officers on July 4th and 5th of 1985.

■ The state must prove beyond a reasonable doubt that Misztal was effectively apprised of his rights, and that Misztal knowingly and voluntarily waived those rights, *Green v. State* (1991) Ind.App., 575 N.E.2d 296, 300–301, *reh. denied.* On review we can consider only the evidence in the record which supports the trial court's ruling on the issue. We cannot reweigh the evidence, *Johnson v. State* (1991) Ind. App., 580 N.E.2d 368, 370. If there is "substantial evidence of probative value" to support the trial court's decision, we cannot disturb its decision, *Green*, at 301.

Misztal claims that his insufficient understanding of English prevented him from knowingly and intelligently making a waiver of his *Miranda* rights. The trial court held a hearing on December 18, 1985 to decide whether Misztal had failed to make a knowing and intelligent waiver of his rights which would require the court to suppress Misztal's statements to the police. Evidence was presented there that Misztal understood Ukranian and Polish, that his rights were read to him both in Ukranian and Polish, that he stated that he understood his rights as they were interpreted to him, and that he waived his rights after receiving that interpretation.

Because there is substantial evidence of probative value on the record to support the trial court's decision, we cannot reverse its decision.

We remand this case in order that the trial court may enter judgment in accord with the jury's original verdict finding Misztal guilty of voluntary manslaughter.

SHARPNACK and HOFFMAN, JJ., concur.