

**FILED**

Feb 24 2017, 8:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Billy Brantley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 24, 2017<br><br>Court of Appeals Case No.<br>49A04-1606-CR-1401<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Grant W.<br>Hawkins, Judge<br><br>Trial Court Cause No.<br>49G05-1411-F2-50827 |

**Najam, Judge.**

## Statement of the Case

[1] Billy Brantley appeals his conviction for Voluntary Manslaughter, a Level 2

felony. He raises three issues for our review, but we need only consider the

following dispositive issue: whether the State presented sufficient evidence to support Brantley's conviction for voluntary manslaughter. We reverse.

## Facts and Procedural History

[2] In July 2014, Brantley lived in a home in Indianapolis with his sister, Martha Gunn ("Martha"), her husband, Bruce Gunn ("Bruce"), and the couple's eight year old son, Sean. Brantley had known Bruce for eighteen years and had lived with Martha and Bruce while Brantley was in high school. After he spent several years in the Air Force after high school, Brantley moved back in with Martha and Bruce in 2012.

[3] Bruce was a fifty-eight year old retired Eli Lilly chemist who suffered from both physical and mental health problems. Bruce suffered from a seizure disorder and he had undergone two back surgeries, one of which had been performed at approximately the beginning of July 2014. Bruce had been prescribed pain medication and had a vagal nerve simulator, which is a device used to interrupt nerve transmissions and lessen chronic pain. Bruce also had a history of harming himself, had engaged in suicidal behavior on several occasions, and had attempted to stab himself with a knife on more than one occasion. Bruce had sometimes kept knives under the cushion of the recliner in which he usually sat.

[4] Bruce and Martha had a history of verbally fighting with each other. And, on one occasion in 2002, while Brantley was in high school, Bruce had physically attacked Martha and Brantley had to intervene to protect his sister. Brantley

had heard Martha and Bruce fighting in their bedroom and, when he had subsequently heard his sister softly calling his name, he had entered the couple's bedroom to find Bruce choking Martha. Brantley had then hit Bruce on the head with a pool cue, which had forced Bruce to release Martha. Police then responded to a 9-1-1 call and arrested Bruce. Bruce's resulting domestic battery charges were later resolved by Bruce entering a mental health diversion program.

[5] Brantley was employed as a locksmith but, on the morning of July 14, 2014, he woke up at approximately 9:00 a.m. to prepare for a 10:00 a.m. job interview for a better-paying job. Because Brantley knew his job interview was to take place in a high-crime neighborhood, he armed himself with a new gun he had legally purchased. After he showered, he went downstairs and found Bruce, Martha, and Sean all sleeping in the living room. Bruce was asleep in his recliner just inside the entryway to the room, and Martha and Sean were on the couch. Martha was recuperating from surgery on her foot and hand, and she had slept on the couch all night. Brantley woke Martha up, as he was concerned that she had overslept. Martha then woke Bruce up and asked him to give Brantley the twenty dollars they had decided to give him the night before for gas. Bruce gave Brantley the money and wished him good luck with the interview.

[6] Brantley arrived back home at about 11:00 or 11:30 a.m. He warmed some pizza for himself in the microwave in the kitchen, went into the living room where Bruce, Martha, and Sean were still located, and sat down to eat in front

of the TV. Bruce and Martha were arguing loudly, but Sean was still asleep on the couch. The couple stopped yelling at each other for five or ten minutes after Brantley came into the room, and Bruce asked Brantley about the interview. Soon, though, Bruce became upset again—about something Martha had said in a telephone call—and he began yelling at Martha again. Brantley listened to the argument as he sat in his chair, eating and trying to tell Martha and Bruce about his job interview. Martha got up and tried to leave the room, but Bruce stood up quickly and blocked her exit. Martha then returned to the couch and sat back down.

[7] The argument continued to escalate between Martha and Bruce, with both of them yelling at each other. Brantley repeatedly asked Bruce to calm down, but Bruce became increasingly irate. Bruce began yelling at Brantley, too, and stated as he rose from his recliner that he was going to "take care of all of his problems." Tr. Vol. III at 679, 686. Brantley and Martha both saw Bruce holding something in his clenched fist as he rose from his chair. The only path out of the room to the rest of the house was through a small opening between Bruce's recliner and a large entertainment unit. There was a sliding glass door to the back yard, but there was "no way out" because the yard was fenced and the exit gate was padlocked on the outside. *Id.* at 511-12, 593-94.

[8] Brantley drew his gun and fired it once at Bruce. The bullet from Brantley's gun entered Bruce's body in the left chest area and exited from the left lower back area. It was a fatal wound. The bullet did not enter Bruce's chair but passed through the wall behind and above his recliner. When Bruce fell to the

floor, Martha grabbed her son and took him out the front door to a neighbor's house. Martha and Brantley each separately placed calls to 9-1-1 almost immediately after the shot. In her 9-1-1 call, Martha was frantic and crying and repeatedly stated that her brother had shot her husband when her husband had tried to attack her and was coming at them. Brantley, who had military and law enforcement training, was more composed in his 9-1-1 call and told the operator Bruce had tried to attack him and he had to shoot him. It was later discovered that the item Bruce had been holding in his hand was not a knife but his glasses.

[9] The State charged Brantley with voluntary manslaughter. Brantley raised a claim of self-defense, and he and Martha testified at his April 11-13, 2016, jury trial in support of that defense. Both Brantley and Martha testified that Brantley had remained calm during the entire incident on July 14, 2014. They both also testified that Bruce had an object in his hand as he rose from his recliner, screaming; however, neither could see what the object was. Brantley testified that he could only see that the object in Bruce's hand was shiny and that he believed it was a knife. Both Brantley and Martha testified that they knew Bruce had kept knives in his recliner and that they had been poked by knives before when they had tried to sit in Bruce's recliner. Sean also testified at the trial and stated that his brother had found two butter knives and a steak knife behind the cushion in Bruce's recliner on the evening of July 14, after the shooting. Sean testified that, although he occasionally had heard his parents' voices raised during the events of the morning of July 14, he was sleeping most

of the time. The State presented evidence at trial that the position of Bruce's body after he was shot indicated he was not coming toward Bruce but was only in the process of rising from his chair when he was shot.

[10] The trial court gave the jury the following instruction on the charged offense:

> The crime of Voluntary Manslaughter, a Level 2 felony with which the Defendant is charged in Count I, is defined by statute as follows:
>
> A person who knowingly or intentionally kills another person while acting under sudden heat commits Voluntary Manslaughter, a Level 2 felony.
>
> The existence of sudden heat is a mitigating factor that reduced what otherwise would be Murder to Voluntary Manslaughter. *The State has conceded the existence of sudden heat by charging Voluntary Manslaughter instead of Murder.*
>
> To convict the Defendant, the State must have proved each of the following elements beyond a reasonable doubt:
>
> 1. The Defendant, Billy Brantley,
>
> 2. knowingly
>
> 3. killed
>
> 4. Bruce Gunn.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty.

> *If the State did prove each of these elements beyond a reasonable doubt,
> you may find the Defendant guilty of Voluntary Manslaughter*, a Level
> 2 felony.

Appellant's App. Vol. II at 95 (emphases added). The court also instructed the jury as follows on the term "sudden heat":

> The term *sudden heat*, as applied to the crime of Voluntary
> Manslaughter, means an excited state of mind. It is a condition
> that may be created by strong emotion such as anger, rage,
> sudden resentment, or jealousy. It may be strong enough to
> obscure the reason of an ordinary person and prevent
> deliberation and meditation. It can render a person incapable of
> rational thought.

*Id*. at 98 (emphasis in original). The trial court also gave the jury an instruction on self-defense.

[11]    The jury found Brantley guilty of voluntary manslaughter, and the trial court sentenced him accordingly. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[12]    Brantley maintains that, if it was permissible for the State to bring a stand-alone charge of voluntary manslaughter against him, then in so doing the State had the burden of providing sufficient evidence that he acted with "sudden heat." Because we decide this matter based on Brantley's sufficiency of the evidence claim, we need not address his contention that the trial court committed fundamental error by instructing the jury that the State had conceded "sudden

heat," or the State's contention that there was no such error or, if there was, that Brantley "invited" the error.[1]  We need not consider the correctness of the jury instructions because the Due Process Clause of the United States Constitution protects every defendant against conviction except upon proof beyond a reasonable doubt.  *In Re Winship*, 397 U.S. 358, 364 (1970).  If there is no evidence of sudden heat in the record, the State has not met its constitutional burden of proof.

[13]  The issue of sufficiency of the evidence may be raised for the first time on appeal.  *See* Ind. Trial Rule 50(A)(5); *Dishmon v. State*, 770 N.E.2d 855, 857 (Ind. Ct. App. 2002), *trans. denied*.  In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses.  *See, e.g.*, *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010).  We consider only the probative evidence and reasonable inferences therefrom that support the conviction, *Gorman v. State*, 968 N.E.2d 845, 847 (Ind. Ct. App. 2012), *trans. denied*, and we "consider conflicting evidence most favorabl[e] to the [jury's verdict]," *Wright v. State*, 828 N.E.2d 346, 352 (Ind. 2005).  We affirm if the probative evidence and reasonable inferences drawn from that evidence "could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt."  *Jackson*, 925 N.E.2d at 375.

---

[1]  It might also be said that the State invited the error in the instruction when it agreed to the instruction that it had "conceded" sudden heat and, thus, that the State should not be allowed to benefit from its own invited error by obtaining a retrial in this case.

## *Voluntary Manslaughter as a Stand-Alone Charge*

[14] Brantley first contends that the State was not permitted to charge him with voluntary manslaughter without having also charged him with murder. The crime of voluntary manslaughter is defined as follows:

> (a) A person who knowingly or intentionally:
>
>> (1) kills another human being; or
>>
>> (2) kills a fetus that has attained viability (as defined in IC 16-18-2-365);
>
> while acting under sudden heat commits voluntary manslaughter, a Level 2 felony.
>
> (b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.

Ind. Code § 35-42-1-3 (2014).

[15] Usually, either a defendant raises voluntary manslaughter in an attempt to mitigate a murder charge or the State charges voluntary manslaughter as a lesser included offense to a murder charge. In fact, the parties do not direct us to any Indiana case in which the State brought voluntary manslaughter as a stand-alone offense, and we are unable to find any such case. However, we hold that, because voluntary manslaughter appears in the criminal code as its own crime, the State may charge it as a stand-alone offense. *Cf. State v. Downey*,

476 N.E.2d 121, 123 (Ind. 1995) ("The authority to define crimes and establish penalties belongs to the legislature."). And we perceive no substantive difference between the State's authority to charge voluntary manslaughter together with another charge, such as murder, or by itself.

### *Requirement that the State Prove Sudden Heat*

[16] Because we conclude that the State is permitted to bring a stand-alone charge of voluntary manslaughter, we turn to Brantley's argument that, when the State did so, it was required to prove that he acted under sudden heat. While it is clear that sudden heat is not an "element" of voluntary manslaughter, *see* I.C. § 35-42-1-3(b), nonetheless our supreme court has held that the State must prove sudden heat when it charges a defendant with voluntary manslaughter as a lesser included offense to a murder charge. *Watts v. State*, 885 N.E.2d 1228, 1232 (Ind. 2008). In *Watts*, the State had charged both murder and voluntary manslaughter as a lesser included offense, and the court held that the sudden heat requirement of voluntary manslaughter is "a mitigating factor, not an element, *that the State must prove in addition to the elements of murder*," which elements comprise the remainder of the offense of voluntary manslaughter. *Id.* (emphasis added). This court has also held that the State has the burden to prove sudden heat when it charges the defendant with voluntary manslaughter. *Suprenant v. State*, 925 N.E.2d 1280, 1282 (Ind. Ct. App. 2010), *trans. denied*; *Misztal v. State*, 598 N.E.2d 1119, 1122 (Ind. Ct. App. 1992), *trans. denied*.

[17] We perceive no reason why the State should be required to prove sudden heat when charging voluntary manslaughter as a lesser included offense to murder

but be relieved of that burden of proof when it brings voluntary manslaughter as a stand-alone charge.[2] We hold that the State was required to prove sudden heat when it charged Brantley with voluntary manslaughter.

## *Sufficiency of the Evidence*

[18]    Having concluded that the State had the burden to prove sudden heat, we turn to whether the State met that burden.[3] We hold that the State failed to produce any evidence, let alone prove beyond a reasonable doubt, that Brantley acted under "sudden heat" when he knowingly killed Bruce. As we have explained:

> "Sudden heat" is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection. *Dearman v. State*, 743 N.E.2d 757, 760 (Ind. 2001). Anger alone is not sufficient to support an instruction on sudden heat. *Wilson v. State*, 697 N.E.2d 466, 474 (Ind. 1998). Nor will words alone "constitute sufficient provocation to warrant a jury instruction on voluntary manslaughter," and this is "especially true" when the words at issue are not intentionally designed to provoke the defendant, such as fighting words. *Allen v. State*, 716 N.E.2d 449, 452 (Ind. 1999).
>
> In addition to the requirement of something more than "mere words," the provocation must be "sufficient to obscure the reason

---

[2] We disagree with the trial court's assessment that the State "conceded" sudden heat by not charging Brantley with murder. A "concession" is "[t]he voluntary yielding to a demand for the sake of a settlement." *Black's Law Dictionary* (10th ed. 2014). Here, Brantley made no demand that he had acted in sudden heat to which the State could have yielded. Rather, the only issue Brantley raised was the issue of self-defense.

[3] It is uncontested that the State proved that Brantley knowingly killed Bruce. *See* I.C. § 35-42-1-3.

of an ordinary man," an objective as opposed to subjective standard. *See Stevens v. State*, 691 N.E.2d 412, 426 (Ind. 1997) (refusing to find that a threat to disclose molestation would "understandably" provoke "an ordinary twenty-year-old man" to rage or terror). Finally, Voluntary Manslaughter involves an "impetus to kill" which arises "suddenly." *Id*. at 427.

*Suprenant*, 925 N.E.2d at 1282-83.

[19] Here, neither party presented any evidence of sudden heat or made argument to the jury that Brantley acted under sudden heat.[4] There was no evidence presented that Brantley was angry, enraged, suddenly resentful, or in terror. To the contrary, the only evidence before the jury regarding Brantley's state of mind was the testimony from the only witnesses to the shooting—Brantley and Martha—that Brantley had behaved calmly before, during, and after the shooting.[5] That evidence was not only undisputed but the State also relied on it in its closing argument. The jury heard no evidence from which it could find that Brantley "experienced 'terror' sufficient to obscure his reason and that a 'sudden impetus to kill' arose." Slip op. at 4. There was no evidence that Brantley was anything but calm at all relevant times. And the State never argued otherwise to the jury—rather, in his closing argument the prosecutor agreed that Brantley was *not* in an excited state during the 9-1-1 call that was

---

[4] The only time the State mentioned sudden heat was in the Information defining the charge of voluntary manslaughter.

[5] Even if we were to disregard this evidence of Brantley's calm demeanor, we would be left with no evidence at all regarding Brantley's state of mind and, thus, no factual basis to support a reasonable inference that Brantley acted out of "terror." Slip op. at 4.

immediately subsequent to the shooting. After the prosecutor played that call for the jury, the prosecutor stated, "[a]wfully, awfully matter of fact on that. And that is bothersome." Tr. Vol. III at 714.

[20] Although there was some evidence that Bruce was angry at Brantley as well as Martha, his anger alone is not sufficient evidence of provocation to cause a person to act under sudden heat. *Suprenant*, 925 N.E.2d at 1282. Neither are Bruce's words as he stood up evidence of such provocation. *Id.* at 1283. Bruce's conduct of rising from his chair while making an angry statement did not go so far beyond "mere words" or mere anger so as to constitute provocation leading to sudden heat. *Id.* at 1284 (holding that, "[a]lthough there was some non-verbal action by the victim, we do not find that the lawful conduct of gathering one[']s belongings goes so far beyond 'mere words' as to constitute 'sudden heat[,]'").

[21] Certainly, from our remote vantage point, the reason for the prosecutor's decision not to charge murder is not obvious. Nonetheless, the State is not entitled to a mulligan. The prosecutor chose to charge only voluntary manslaughter, and, to prove that offense, the law requires more than proof of the elements of murder. *Suprenant*, 925 N.E.2d at 1282. Again, as our supreme court has explained, the State was required to show that, when he shot Bruce, Brantley was angry, enraged, suddenly resentful, or in terror. *Dearman*, 743 N.E.2d at 760. There is simply no such evidence here.

[22] Although the jury was instructed on the definition of "sudden heat," the State failed to provide any evidence of it. Instead, the State asserted that it had "conceded" sudden heat by not charging murder. But a party with the burden of proof on an issue may not meet that burden by "conceding" it when the other party has not also conceded the issue. Nor may the State avoid its burden of proof by "conceding" sudden heat when there is no evidence of sudden heat in the record. *Watts*, 885 N.E.2d at 1233.

[23] Because the State failed to present any evidence of sudden heat to the jury, Brantley's conviction for voluntary manslaughter cannot stand. And, since there was insufficient evidence to support the conviction, Brantley cannot be retried. *See Cuto v. State*, 709 N.E.2d 356, 362 (Ind. Ct. App. 1999) (citation omitted) ("Double jeopardy bars retrial if a conviction is reversed on the basis of insufficient evidence.").

## *Conclusion*

[24] When the State charged Brantley with voluntary manslaughter, it was required to provide evidence sufficient to prove beyond a reasonable doubt that he acted under sudden heat. The State wholly failed to carry that burden, as it provided no evidence at all of sudden heat. Therefore, Brantley's conviction for voluntary manslaughter must be reversed.

[25] Reversed.

May, J., concurs.

Bailey, J., dissents with separate opinion.

Billy Brantley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
49A04-1606-CR-1401

**Bailey, Judge, dissenting.**

[26] I agree with the majority that the State did not properly obtain its conviction. Article 1, Section 19 of the Indiana Constitution protects the province of the jury in criminal trials, allocating to the jury the right to determine the law and the facts. *Keller v. State*, 47 N.E.3d 1205, 1208 (Ind. 2016). Here, the province of the jury was invaded by a fundamentally erroneous instruction attempting to relieve the State of its burden of proof. However, unlike the majority, I believe that retrial is permissible, in light of the evidence of sudden heat. Where a burden-shifting instruction has deprived a defendant of due process of law, and a conviction is reversed, retrial is allowable if the evidence at trial was sufficient

to support the original conviction. *Matthews v. State*, 718 N.E.2d 807, 810 (Ind. Ct. App. 1999).

[27] Our legislature has described voluntary manslaughter as an independent crime, committed when a person "knowingly or intentionally kills another human being while acting under sudden heat." Ind. Code § 35-42-1-3. Whether to prosecute at all and what charges to bring are generally within the prosecutor's discretion. *Moala v. State*, 969 N.E.2d 1061, 1067 (Ind. Ct. App. 2012). Thus, strictly speaking, the State was permitted to charge Brantley with voluntary manslaughter without having also charged him with murder. This does not mean that the State selected a wise course.

[28] When a human being has been killed because of the knowing or intentional conduct of another, the starting point that our legislature has provided is the offense of murder. *See* I.C. § 35-42-1-1 ("A person who knowingly or intentionally kills another human being … commits murder, a felony.") When sudden heat exists that offense is mitigated. *See* I.C. § 35-42-1-3(b) ("The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder … to voluntary manslaughter.")

[29] Sudden heat is not an element of voluntary manslaughter, but, to obtain a murder conviction, the State must disprove the existence of sudden heat, beyond a reasonable doubt, when the defendant has injected that issue. *Jackson v. State*, 709 N.E.2d 326, 328 (Ind. 1999). The evidence of sudden heat may be derived from "the State's case or the defendant's own." *Id.* Where the State

has charged both murder and the lesser-included offense of voluntary manslaughter, the State establishes voluntary manslaughter by proving all the elements of murder, plus sudden heat, a mitigating factor. *Misztal v. State*, 598 N.E.2d 1119, 1122 (Ind. Ct. App. 1992).

[30] Here, the State injected the issue of sudden heat by means of its charging information. Recognizing a heightened burden – proof of the elements of murder plus sudden heat – the State attempted to meet its burden of proof by means of a final jury instruction whereby the State purported to "concede" the existence of sudden heat. The State then argued that the issue had been conceded. By its methodology, the State withdrew from the jury an opportunity to determine the existence of sudden heat. "Existence of sudden heat is a classic question of fact to be determined by the jury." *Fisher v. State*, 671 N.E.2d 119, 121 (Ind. 1996).

[31] Having "conceded" sudden heat, the State proceeded as if it needed only to prove that Brantley knowingly or intentionally killed a human being. Brantley raised a defense of self-defense or defense of another and testified to that end. Brantley testified that he drew his gun and shot Bruce, a deliberate act. There was no claim of accident, insanity, or involuntary movement. There was no dispute as to whether Brantley knowingly or intentionally caused the death of Bruce, a human being. Essentially, Brantley conceded the elements of murder but claimed that the act was justified. However, the jury was not afforded the clear opportunity to decide whether Brantley acted with complete justification or had some criminal culpability because the erroneous instruction skewed the

deliberative process.  The erroneous instruction had effectively taken from the jury's deliberations the very issue that the State had injected, sudden heat.

[32] This is not to say, however, that the record is devoid of evidence of sudden heat.  Sudden heat is established by showing that the defendant experienced "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." *Dearman v. State*, 743 N.E.2d 757, 770 (Ind. 2001).  Voluntary manslaughter involves an "impetus to kill" which arises "suddenly." *Stevens v. State*, 691 N.E.2d 412, 427 (Ind. 1997).

[33] Here, the jury heard evidence from which it could find that Brantley experienced "terror" sufficient to obscure his reason and that a "sudden impetus to kill" arose. *See id.*  The situation was not limited to mere words.  Brantley testified that he heard Bruce say "he was taking care of all of his problems *right now*" (emphasis added) and Bruce did so as "he came out of the chair" with a shiny object in hand.  (Tr. at 592.)  Necessarily, Brantley evaluated this verbal taunt and advancing movement in light of the relational background:  there had been an ongoing argument between Bruce and Martha over finances and medication, Bruce had refused to allow Martha to leave the living room, Bruce had once choked Martha, he had stabbed himself, and he had a propensity to keep knives near him to open packages.  Whatever Brantley's internal processes were, they triggered a rapid response resulting in the discharge of his weapon into Bruce.  Whether he acted under justification or provocation is squarely

within the realm of the jury's deliberative process. By drafting a "concession," the instruction distorted the deliberative process.

[34] It is a classic responsibility of the jury to evaluate the culpability associated with one's actions. In his testimony, Brantley claimed that he was confronted with extreme circumstances. According to his argument, he acted without fault. The jury rejected this claim of self-defense. However, this did not require the jury to ignore the extremities of the situation. It could well have found that Bruce's conduct fell short of that which would cause a reasonable man to fear for his life or the life of another, but nevertheless provoked Brantley to deliberately kill. It was prevented from doing so by the "concession" strategy.

[35] As there is evidence of provocation and a sudden killing, there is evidence from which the jury could have concluded that Brantley acted in sudden heat. I would find fundamental error in the giving of the erroneous, invasive instruction, find sufficient evidence to permit retrial on the charge of voluntary manslaughter,[6] and remand to the trial court.

---

[6] Brantley cannot be tried on a murder charge. "[I]t has long been held in Indiana that a conviction for voluntary manslaughter is an acquittal of the greater offense of murder." *Watts v. State*, 885 N.E.2d 1228, 1232 (Ind. 2008) (citing *Clem v. State*, 42 Ind. 420, 426 (1873)).