ATTORNEYS FOR APPELLANT
Ruth Ann Johnson
Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 16 2018, 10:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



# In the
# Indiana Supreme Court

No. 18S-CR-98

BILLY BRANTLEY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G05-1411-F2-50827
The Honorable Grant W. Hawkins, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A04-1606-CR-1401

**February 16, 2018**

**Massa, Justice.**

This case presents the unusual and rare circumstance where a defendant is charged with voluntary manslaughter without also being charged with murder. At trial, the State conceded the existence of sudden heat to support the standalone charge and a jury found Billy Brantley guilty. Brantley appealed arguing the State was required to prove sudden heat and the State's concession rendered his self-defense defense illusory. Although the trial court instructed the jury that the State

conceded the existence of sudden heat, we find there was evidence that Brantley acted in either sudden heat or self-defense. Therefore, the jury was presented with a classic question of fact, and in its judgment determined Brantley was guilty. Thus, we grant transfer and affirm.

**Facts and Procedural History**

Billy Brantley lived in Indianapolis with his sister, Martha Gunn; brother-in-law, Bruce Gunn; and their son, Sean. Brantley had known Bruce for eighteen years and previously lived with Martha and Bruce when Brantley was in high school and after spending some time in the military.

Bruce was retired and suffered from physical and mental health problems. Bruce had had multiple back surgeries, experienced seizures, and was often in search of pain medication in addition to his vagal nerve simulator, a device implanted in his shoulder to lessen chronic pain. Bruce's poor health often translated into anger, making him a volatile figure in the home. He and Martha fought often and more than once Martha feared for her life at his hands. When Brantley was in high school, he had to use a pool cue to stop Bruce from choking Martha. Another time, Brantley had to protect the couple's son when Bruce placed a knife to Sean's neck. Bruce's struggles were not limited to others, though; they also led him to self-harm. Bruce stabbed himself at least two times, tried to overdose with pills, and even drank antifreeze. These suicide attempts were well known to Brantley, Martha, and Sean who would often find him and intervene. On any given day, Martha was unsure if Bruce would kill himself, her, or their son.

On July 14, 2014, Brantley woke up around 9:00 AM, showered, and got ready for a job interview scheduled for 10:00 AM. Brantley's interview was in a high-crime area of town so he armed himself with a gun. When he came downstairs from his bedroom, Brantley found everyone asleep in the living room: Martha and Sean on a couch and Bruce in a chair. Brantley briefly woke up Martha, who in turn woke up Bruce and asked him to give Brantley twenty dollars for gas. Bruce gave him the money, wished him good luck, and Brantley left.

2

An hour or so later, Brantley arrived home and warmed himself some leftover pizza in the kitchen. He could hear Bruce and Martha arguing, but assumed their screaming was just the usual type of fighting that occurred between them. Although he could sense the tension, Brantley joined them in the living room so he could eat in front of the television. Their fighting briefly stopped—for just five or ten minutes—and Bruce asked about the interview, but when Martha tried to leave the room, Bruce's temper flared. His screaming elevated and he forcefully stood up from his chair, blocking the only exit out of the living room. Martha then returned to the couch and Bruce sat back down, but the fighting continued. Bruce was "belligerent to where he was very angry, screaming and he was bouncing up out of his chair, back down into his chair." Tr. 583. During all of this, Brantley monitored the situation, asking Bruce "what's going on," "let's talk about this," "what can I do," but the atmosphere remained "very chaotic." Tr. 583.

Bruce would not calm down and became increasingly irate. He turned his attention to Brantley and told him he was "'getting ready to get rid of all [his] problems right now.'" Ex. 6, p. 15. Then Bruce "lunged" from his chair, and Brantley and Martha each noticed his fist was clenched around something shiny. Tr. 640. Brantley thought it was a knife because Bruce was known for keeping sharp objects, including knives, in his chair. Fearing Bruce was going to "kill" or "destroy" him, Brantley drew his gun and told Bruce to stop. Tr. 601. But Bruce continued toward him and Brantley fired. Bruce fell to the ground.

Martha grabbed Sean and they quickly ran out of the living room, past Bruce's body, and out the front door to a neighbor's house. Martha then called 911. She frantically reported that her brother, Brantley, had shot her husband after her husband tried to "attack" them. Ex. 2. In a separate 911 call, Brantley calmly told the operator that his "brother-in-law tried to attack [him] and [he] shot him." Ex. 2. When police arrived, they found Bruce's body crumpled on the floor next to his glasses—the shiny object Brantley and Martha had seen.

Brantley was charged with one count of voluntary manslaughter. At trial, Brantley claimed self-defense, and both he and Martha testified to that effect. The State, however, pointed to inconsistencies between Brantley's version of events and the physical evidence to undermine the

defense. The trial court's proposed final instructions included instructions on self-defense, voluntary manslaughter, and the definition of sudden heat. Regarding voluntary manslaughter, the instruction provided that "sudden heat is a mitigating factor" and "[t]he State has conceded the existence of sudden heat by charging Voluntary Manslaughter instead of Murder." App. 95. Prior to the end of trial, Brantley and the State were given the opportunity to review the instructions. Each indicated the instructions were correct. The jury found Brantley guilty, and he was subsequently sentenced to ten years with five years suspended.

The Court of Appeals reversed Brantley's conviction. In doing so, it declined to address issues of instructional error and whether such error was invited, instead holding that the State failed to present sufficient evidence that Brantley acted with sudden heat and, therefore, the State was barred from retrial. *Brantley v. State*, 71 N.E.3d 397, 401, 403-04 (Ind. Ct. App. 2017). A dissenting judge agreed Brantley's conviction should be reversed, but not for lack of evidence. *Id.* at 404. Rather, the dissent believed by instructing the jury that the State had conceded the existence of sudden heat, the province of the jury was invaded and the trial court committed fundamental error. *Id.* But in the dissent's view, retrial was possible because there was evidence of sudden heat. *Id.* at 404-05.

We now grant the State's petition to transfer and vacate the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Sufficiency-of-the-evidence arguments invoke a deferential standard of review, in which we neither reweigh the evidence nor judge witness credibility, instead reserving those matters to the province of the jury. *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007). We consider all the evidence and reasonable inferences supporting the verdict and will affirm the conviction if probative evidence supports each element of the crime beyond a reasonable doubt. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013).

**Under appropriate circumstances, evidence supporting sudden heat as a mitigating factor may also support a self-defense defense, and a jury may consider both theories in delivering its verdict.**

As a preliminary matter, we address whether voluntary manslaughter may be brought as a standalone charge. We find that it can.

While it is true that in most cases voluntary manslaughter is charged as a lesser-included offense to a murder charge, "[t]he authority to define crimes and establish penalties" is vested exclusively in the legislature as a matter of public policy and discretion. *State v. Downey*, 476 N.E.2d 121, 122-23 (Ind. 1985). We may not substitute our judgment as to the "desirability or wisdom of legislation" for that of the General Assembly. *Id.* at 122. Our General Assembly has separately defined the crime of voluntary manslaughter. *See* Ind. Code § 35-42-1-3(a) (2017) ("A person knowingly or intentionally . . . kills another human being . . . while acting under sudden heat commits voluntary manslaughter, a Level 2 felony."). As evident by its own definition, we find that voluntary manslaughter may be brought as a standalone charge and, accordingly, the State was permitted to charge Brantley with only voluntary manslaughter.[1]

Turning to the merits, we must determine, first, whether sudden heat is an element or a mitigating factor to a freestanding charge of voluntary manslaughter; and, second, who bears the burden of proving sudden heat. Relying on this Court's opinion in *Watts v. State*, 885 N.E.2d 1228 (Ind. 2008), and the language of the voluntary manslaughter statute, the State argues sudden heat

---

[1] A search of our library turns up few precedents on which to resolve this question. And the prosecution's charging decision cannot help but raise questions. Was it based on mild empathy, for the choice Brantley faced in an instant? Did the State's attorneys show Brantley consideration by taking murder off the table, leaving a jury to choose between manslaughter or self-defense? Or were their motives more strategic, hoping to undermine self-defense by conceding sudden heat? The record provides no clues and its appellate story tells a cautionary tale that counsels against the approach. Our Court of Appeals likewise warned that simply because the State may charge voluntary manslaughter as a standalone, it "does not mean the State selected a wise course." *Brantley*, 71 N.E.3d at 405. Murder and voluntary manslaughter both require a knowing killing; whether culpability is mitigated by sudden heat is best left to a factfinder to determine, and avoids the thicket we must cut through today.

is nothing more than a mitigating factor, and thus it could concede its existence. In other words, the State claims sudden heat is not an element of the offense of voluntary manslaughter. Brantley, citing to the same sources, contends that sudden heat is only a mitigating factor when the State charges murder, and in this novel situation the State must prove sudden heat. We find that sudden heat is a mitigating factor. However, there must be some evidence of sudden heat, not merely a concession, to enable the factfinder to evaluate a defendant's culpability.

Although *Watts* involved a murder charge and an instruction on voluntary manslaughter, we agree that it is instructive. Watts was charged with murder and at trial requested jury instructions on involuntary manslaughter and criminal recklessness as lesser-included offenses. *Id.* at 1231. The State then requested a voluntary manslaughter instruction, to which Watts objected, arguing that he had not introduced any evidence of sudden heat. *Id.* at 1233-34. In reversing Watts' voluntary manslaughter conviction, we noted that "sudden heat is a mitigating factor, not an element," and found that the trial court erred in instructing the jury on voluntary manslaughter because there was "no possible evidence of sudden heat before the jury," thus no serious evidentiary dispute existed to warrant the instruction.[2] *Id.* at 1232-33.

At least three things can be gleaned from *Watts* and applied to this novel case. One, sudden heat is a mitigating factor, not an element. *See also Bane v. State*, 587 N.E.2d 97, 100-01 (Ind. 1992) (finding it was error to instruct the jury that sudden heat was an element). Two, there must be some evidence that a defendant acted in sudden heat before a jury may consider voluntary manslaughter. As such, to the extent the State argues it can concede the existence of sudden heat without evidence of such in the record, we disagree. Three, even when voluntary manslaughter is the lead charge, the State must prove the elements of murder: the knowing or intentional killing of another human being. I.C. § 35-42-1-1. Here, it is undisputed that Brantley knowingly killed Bruce

---

[2] The essence of *Watts* is that the State cannot get a compromise verdict option in the absence of evidence in the record to support the instruction. 885 N.E.2d at 1233.

Gunn. Therefore, even without a lead murder charge, the State must prove the elements of murder and there must be some evidence of the sudden-heat mitigating factor for a defendant to be found guilty of voluntary manslaughter. This is consistent with subsection 3(b) of the voluntary manslaughter statute, which says "[t]he existence of sudden heat is a mitigating factor that reduces what otherwise would be murder . . . to voluntary manslaughter."

Turning to the record in this case, we find there was evidence of sudden heat, although scant. Sudden heat exists when a defendant is "provoked by anger, rage, resentment, or terror, to a degree sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Isom v. State*, 31 N.E.3d 469, 486 (Ind. 2015) (internal citation omitted). Evidence of sudden heat may be found in either the State's case or the defendant's. *Jackson v. State*, 709 N.E.2d 326, 328 (Ind. 1999). It is up to "the jury to decide whether the evidence presented constitute[s] sudden heat sufficient to warrant a conviction for voluntary manslaughter." *Bane*, 587 N.E.2d at 100.

Brantley consistently testified that the situation in his home on July 14, 2014, was chaotic. Central to this chaos was Bruce, whose temper raged and anger oscillated between Martha and Brantley. But this situation was not a one-off occurrence, and it would be misguided to think of it in a vacuum. Brantley's relationship with Bruce was strained. Bruce saw Brantley as a financial burden on him and Martha. Brantley had witnessed Bruce's domestic violence against his sister and nephew. Brantley also knew that Bruce had a history of mental illness. And crucially, Brantley knew that Bruce kept sharp objects in his chair. So, when Bruce angrily rose from his chair, after telling Brantley he was "'getting ready to get rid of all [his] problems *right now*'" and Brantley's eye caught something shiny in Bruce's hand, it was well within the jury's province to consider whether Brantley experienced terror and had the sudden impetus to kill. *See Fisher v. State*, 671 N.E.2d 119, 121 (Ind. 1996) ("Existence of sudden heat is a classic question of fact to be determined by the jury."); *Stevens v. State*, 691 N.E.2d 412, 427 (Ind. 1997) (the impetus to kill arises suddenly in the context of voluntary manslaughter).

This terror brings us to the next issue: whether the State's concession of sudden heat nullified Brantley's claim of self-defense. Brantley argues that it did because the self-defense defense completely excuses conduct based on the rational decision that force is necessary to protect oneself, whereas a person acting in sudden heat is incapable of rational thought. By instructing the jury that the State conceded sudden heat, Brantley contends, the trial court removed the question from the jury's consideration and committed fundamental error. The State counters that fundamental error did not occur because Brantley and the State agreed to the instruction.

After Brantley and the State rested, the trial court provided counsel with proposed final instructions, and asked "Can you think of anything we omitted or I stated incorrectly?" Tr. 705. Counsel replied:

> [State]: After I check something real quickly . . . no, Your Honor, I think it's (inaudible).
>
> [Court]: You satisfied with the instructions, [Defense]?
>
> [Defense]: They appear to be correct, Judge.
>
> [Court]: All right, then.

Tr. 705-06. Included in the court's instructions was the State's concession. Although Brantley did not object at trial, he now seeks to avoid waiver by claiming fundamental error. *See Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014) (the fundamental error doctrine is an exception to the rule that failure to object precludes consideration of the issue on appeal). However, we find that, if any error occurred, it was invited. *Wright v. State*, 828 N.E.2d 904, 907 (the doctrine of invited error prevents a party from taking advantage of an error she "commits, invites, or which is the natural consequence of her own neglect or misconduct") (internal quotation and citation omitted). Assuming the instruction was in error, Brantley invited the error by indicating the instructions were "correct" and met the defense's satisfaction. Tr. 705

Invited error notwithstanding, claims of self-defense and killing in sudden heat are not inherently inconsistent and, in appropriate circumstances, juries may be instructed on both. *Pinegar v. State*, 553 N.E.2d 525, 528 (Ind. Ct. App. 1990) (finding self-defense and sudden heat

8

are not "necessarily inconsistent" and a "jury should be allowed to determine the elements of self defense and whether there was adequate provocation and, in fact, killing in a sudden heat"). As with most cases, the jury here was faced with two stories: one where Brantley acted irrationally out of sudden heat, the other where Brantley acted rationally in self-defense. These explanations for Brantley's actions are not conflicting since the nature of each defense is different, and it was within the province of the jury to weigh the evidence and assess witness credibility in arriving at its verdict. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016) ("It is the fact-finder's role, not that of [the] appellate court['s], to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction."); *Harris v. State*, 269 Ind. 672, 674-75, 382 N.E.2d 913, 915 (1978) (finding a jury must consider the parties' viewpoints and relevant facts, but it is not required to believe one side's evidence).

Indeed, common to both defenses is terror. A defendant acts in self-defense when confronted with "real danger of death or great bodily harm, or in such apparent danger as caused him, in good faith, to fear death or great bodily harm. The danger need not be actual, but the belief must be in good faith and the reaction must be reasonable." *Franklin v. State*, 266 Ind. 540, 544, 364 N.E.2d 1019, 1021 (1977) (internal citation omitted). Similarly, sudden heat, which is sufficient to reduce murder to voluntary manslaughter, requires evidence of "anger, rage, sudden resentment, or terror that is sufficient to obscure the reason of an ordinary man." *Washington v. State*, 685 N.E.2d 724, 727 (Ind. Ct. App. 1997). Thus, terror sufficient to establish the fear of death or great bodily harm necessary for self-defense could be equally sufficient to invoke sudden heat. In other words, the same evidence can either mitigate murder or excuse it altogether. *See Palmer v. State*, 425 N.E.2d 640, 644 (Ind. 1981). It's the jury's call. Here, faced with competing evidence, the jury rejected Brantley's self-defense defense, a decision we affirm.

9

## Conclusion

Because we find the record contained evidence of sudden heat and the jury properly rejected Brantley's self-defense defense, we grant transfer and affirm his conviction for voluntary manslaughter.

Rush, C.J., and David, Slaughter, and Goff, JJ., concur.