## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 09 2020, 8:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Conner R. Dickerson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Antonio R. Jones,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 9, 2020

Court of Appeals Case No.
20A-CR-771

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

Trial Court Cause No.
49G06-1808-MR-26095

**Altice, Judge.**

**Case Summary**

[1] Following a bench trial, Antonio R. Jones appeals his conviction for murder, a felony. His sole claim is that the State failed to sufficiently rebut his claim of sudden heat and that, therefore, his conviction should be reduced to voluntary manslaughter, a Level 2 felony.

[2] We affirm.

## Facts & Procedural History

[3] Christina Guerrero is Jones's mother, and Roberto Cisneros, Guerreo's longtime boyfriend, is the victim in this case. Jones and Cisneros were also friends. The three regularly spent time together.

[4] On the evening of August 5, 2018, they gathered at the home of Jennifer Reed and David Ezell on Harlan Street in Indianapolis. Daniel Reed, Jennifer's son and Cisneros's good friend, was also present. The group socialized and played video games, and some of them – including Guerrero, Cisneros, and Jones – used methamphetamine. All appeared to be in good spirits that night, except Guerrero and Cisneros were bickering with each other throughout, which was not uncommon for them. She was argumentative with Cisneros, who appeared agitated and expressed a desire to go home several times.

[5] At some point, several members of the group left and went to Cisneros's cousin's home. They all returned a short while later. Guerrero remained in her car, as everyone else went back inside the Harlan Street residence. Guerrero eventually called Jennifer's phone after 1:00 a.m. Cisneros told Jennifer not to

answer and stated, "I know what she wants…. I'll go out there in a minute, and we'll go to the gas station." *Transcript Vol. II* at 48. After he went out to the car, he and Guerrero began arguing loudly. From inside the residence, Jennifer could hear Guerrero yell several times, "you're jealous of my son." *Id*. at 49.

[6] A few minutes later, while the argument continued inside the car, Guerrero called Jennifer and asked her to send out Jones to leave. Seemingly frustrated, Jones gathered his belongings with the help of Daniel. Jones carried his bag and rifle[1] and got into the backseat of the car behind Guerrero, who was in the driver seat. Cisneros was in the front passenger seat. Daniel placed Jones's gaming console in the trunk and then turned to walk toward the house, where Jennifer stood in the doorway.

[7] Cisneros turned around to face Jones and yelled at him, in a "high-pitched pissed off voice," to get out of the car. *Id*. at 86. Jones then proceeded to raise his rifle and begin shooting Cisneros. Daniel and Jennifer screamed for Jones to stop shooting. Jones paused for a brief second, and then shot again. In all, Cisneros was struck five times with gunshots, including to the left side of his back, the side of his chest, his neck, his right arm, and his left hand.

[8] Guerrero exited the car and ran to open the passenger door, as Cisneros stumbled out and fell face down to the ground in a puddle of blood about

---

[1] Jones commonly carried a pistol with him, but he had obtained this rifle in the last week. No one else was armed that night.

twenty feet away. Guerrero repeatedly cried to Jones, exclaiming that he hurt Cisneros and asking why he did it. Jones replied, "F*ck that n*gga." *Id*. at 53. As he held the rifle at his side, Jones screamed at Guerrero, "Quit hollering my name out loud." *Id*. at 31. He ordered her back into the car, and they then sped away. Ezell and Daniel began CPR on Cisneros, as Jennifer called 911. Cisneros died from his injuries. Jennifer and Ezell spoke with officers at the scene but did not initially identify Jones as the shooter, as they feared retaliation. Hours later, however, they identified him.

[9] On August 9, 2019, the State charged Jones with murder, and he was arrested about two weeks later. Jones provided a voluntary statement to police, in which he indicated that he never owned a rifle and that a man named Fish or Blackfish shot Cisneros from outside the car that night.

[10] Jones waived his right to a jury trial, and the bench trial was held over two days in February 2020. David, Jennifer, and Ezell testified as eyewitnesses for the State. Jones testified in his own defense and admitted to shooting and killing Cisneros. Jones claimed that during the argument Cisneros reached back for the rifle on Jones's lap and then they "tussled for it for a little bit." *Id*. at 211. Jones testified that he was "[t]errified" when he pulled the trigger and that he did not remember pulling it multiple times. *Id*. at 212. Guerrero did not testify.

[11] The trial court found Jones guilty of murder. The court expressly rejected Jones's claim that he acted under sudden heat, finding "[his] story not credible." *Id*. at 237. The court explained in part:

Defendant said there was a struggle over the gun and the gun went off. He didn't say I intended to shoot him. He said the gun went off. And didn't even own up to a shooting, an intentional shooting. The Court has to bear that in mind after the [sic] defendant's version is that after fleeing from the scene after shooting his friend after hiding out, after lying to the police, and then trying to tell an entirely different story on the stand, that he's credible; and the Court doesn't find that he is credible. No one will really know what happened other than [those] in the car…. But, and it's the most likely explanation as far as the Court is concerned is that I just simply have a young man that's riding around with a gun that's loaded, carrying it wherever he is, and has methamphetamine and does something stupid. And voluntary intoxication is not a defense to doing something stupid. It's not a defense to murder.

*Id*. at 237. Thereafter, on March 4, 2020, the trial court sentenced Jones to fifty-eight years in the Indiana Department of Correction. Jones now appeals.

## Discussion & Decision

[12] Relying on his own testimony, Jones argues that the State failed to rebut the evidence he presented of sudden heat. Specifically, he notes that when he entered the car, "his mother and her angry, drug-addled, boyfriend, Roberto Cisneros, where [sic] arguing." *Appellant's Brief* at 8. Cisneros, according to Jones, reached for the rifle, which caused Jones to become terrified and shoot him. The difficulty with Jones's appellate argument is that the trial court found his self-serving testimony to be incredible.

[13] It is well established that we cannot reweigh evidence or assess witness credibility when reviewing the sufficiency of the evidence, as those matters are

reserved exclusively for the trier of fact. *See Brantley v. State*, 91 N.E.3d 566, 570 (Ind. 2018), *cert. denied* (2019). Thus, we consider only the evidence and reasonable inferences supporting the conviction and will affirm if probative evidence supports each element of the crime beyond a reasonable doubt. *Id.*

[14] Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. *See* Ind. Code § 35-42-1-3. "Sudden heat exists when a defendant is 'provoked by anger, rage, resentment, or terror, to a degree sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection.'" *Brantley,* 91 N.E.3d at 572 (quoting *Isom v. State*, 31 N.E.3d 469, 486 (Ind. 2015) (internal citation omitted)). "[O]nce the issue of sudden heat has been injected into the case, the burden is on the State to negate its existence." *Bane v. State*, 587 N.E.2d 97, 100 (Ind. 1992). It is then up to the trier of fact to decide whether the evidence constitutes sudden heat sufficient to warrant a conviction for voluntary manslaughter. *Brantley,* 91 N.E.3d at 572.

[15] Here, the evidence favorable to the conviction reveals that Jones entered the car with a loaded rifle during an ongoing argument between his mother and Cisneros. When Cisneros angrily began yelling at Jones and demanded that he get out of the car, Jones raised the rifle and started shooting Cisneros, who was unarmed. Jennifer and Daniel screamed from outside for him to stop shooting. Jones paused momentarily and then shot Cisneros again. Cisneros was shot by Jones a total of five times, including in the back. Immediately after the shooting, Guerrero hurried out of the car and pleaded with Jones to tell her

why he hurt Cisneros, to which Jones responded, "F*ck that n*gga." *Transcript Vol. II* at 53. Jones also demanded that Guerrero stop saying his name out loud and that she get back in the car. The two then sped away as others ran to Cisneros's aid.

[16] It was well within the trial court's province, as trier of fact, to consider whether Jones experienced terror and had the sudden impetus to kill. *See Brantley*, 91 N.E.3d at 572. Indeed, "[e]xistence of sudden heat is a classic question of fact[.]" *Fisher v. State*, 671 N.E.2d 119, 121 (Ind. 1996). Further, it was the trial court's job to assess Jones's credibility and determine, in light of the evidence presented, whether to believe Jones's story. *See Brantley*, 91 N.E.3d at 573 (citing *Harris v. State*, 382 N.E.2d 913, 915 (Ind. 1978) (finding a jury must consider the parties' viewpoints and relevant facts, but it is not required to believe one side's evidence)). The trial court did not believe Jones, and we will not second guess that decision. Based on the evidence, including that Jones fired several shots and continued firing after a brief pause despite pleas from friends at the scene for him to stop, the trial court reasonably could have found Jones guilty of murder beyond a reasonable doubt.

[17] Judgment affirmed.

Mathias, J. and Weissmann, J., concur.