FILED

Jan 06 2020, 10:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Paul G. Stracci
J. Michael Woods
Stracci Law Group, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marcus Lee McCain,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 6, 2020<br><br>Court of Appeals Case No.<br>19A-CR-1113<br><br>Appeal from the<br>Lake Superior Court<br><br>The Honorable<br>Samuel L. Cappas, Judge<br><br>Trial Court Cause No.<br>45G04-1708-MR-6 |

**Vaidik, Judge.**

## Case Summary

[1] The State charged Marcus Lee McCain with murder for shooting a man in the head in a Gary restaurant, an incident that was captured on surveillance video. The State also filed a firearm enhancement, alleging that McCain used a firearm in the commission of murder. McCain argued self-defense during trial

but requested a voluntary-manslaughter instruction at the end of trial. Thereafter, the jury found McCain guilty of voluntary manslaughter, and the trial court found that the firearm enhancement applied. The court then sentenced McCain to forty-five years: twenty-seven years for voluntary manslaughter enhanced by eighteen years for using a firearm.

[2] McCain now appeals. He first argues that the trial court erred in imposing the firearm enhancement because he was acquitted of the offense (murder) that was alleged in the charging information for the enhancement. Because McCain doesn't dispute that (1) voluntary manslaughter is an offense that qualifies for the firearm enhancement, (2) voluntary manslaughter is simply murder mitigated by evidence of sudden heat, (3) he used a firearm to kill the victim, and (4) he is the one who asked for the voluntary-manslaughter instruction at the end of trial, we conclude that the court did not err in imposing the firearm enhancement. McCain also argues that the court impermissibly enhanced his sentence based upon its personal disagreement with the jury's verdict. Given that the court made it clear that it disagreed with the jury's verdict and found as an aggravator that the killing was "cold blooded" and "callous"—which is directly at odds with the jury's finding of sudden heat and therefore an improper aggravator as a matter of law—we choose to exercise our authority to review and revise sentences and remand this case with instructions for the court to sentence McCain to thirty-five years: twenty-five years for voluntary manslaughter enhanced by ten years for using a firearm.

## Facts and Procedural History

[3] In the early morning hours of August 5, 2017, McCain, his cousin, and his girlfriend went to Philly Steaks and Fresh Lemonade in Gary. McCain lived in Wisconsin but was visiting family in Indiana. Although it was after midnight, there were several people in the restaurant at the time, including two young children. After McCain and his girlfriend placed their orders and were waiting for their food, Marcel Harris and two other men walked into the restaurant. According to McCain, he had "never met them a day in [his] life." Tr. Vol. VI p. 224. Two patrons, a husband and wife, noted that the atmosphere of the restaurant changed when the three men walked in. McCain observed that one of the men with Harris had a gun in his pocket and that Harris was "mean-mugging" him. Tr. Vol. VII p. 29. When Harris walked outside the restaurant, McCain followed him. The two exchanged words outside, and Harris re-entered the restaurant and positioned himself at the door. Meanwhile, McCain got his cousin from the car, and the two walked back inside the restaurant. As soon as McCain walked back inside, an argument ensued between Harris and McCain, with Harris pushing McCain. As shown on the restaurant's video-surveillance system, McCain then grabbed a gun from his cousin's hand. *See* Ex. 53 (DVD). According to McCain, after he grabbed the gun Harris told his friend with the gun to "[s]hoot that shit." Tr. Vol. VII p. 7. At this point, McCain thought that "it was [Harris's] life or [his] life." *Id.* McCain then shoved Harris several feet, walked up to him, and pushed the gun into the side of his head. *See* Ex. 53. When Harris appeared to swat away the gun, McCain

shot him in the temple at close range, killing him. *Id.* McCain, his girlfriend, and his cousin ran out of the restaurant. *Id.*

[4] Officers from the Gary Police Department responded shortly after the shooting. They obtained still images of McCain from the restaurant's video-surveillance system and broadcasted them on Chicago news stations. Shortly thereafter, someone from Wisconsin identified McCain as the shooter.

[5] On August 10, the State charged McCain with murder. Appellant's App. Vol. II p. 27. About a month later, the State added a firearm enhancement:

> Marcus Lee McCain did knowingly or intentionally use a firearm in the commission of the offense of Murder, contrary to I.C. 35-50-2-11(d).

*Id.* at 41. Indiana Code section 35-50-2-11(d) provides, in relevant part:

> The state may seek, on a page separate from the rest of a charging instrument, to have a person who allegedly committed an **offense** sentenced to an additional fixed term of imprisonment if the state can show beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the **offense**.

(Emphases added). An "offense" is defined as (1) a felony under Indiana Code article 35-42 that results in death or serious bodily injury; (2) kidnapping; or (3) criminal confinement as a Level 2 or 3 felony. *Id.* at (b).

[6] A four-day jury trial was held in December 2018. During opening statements, defense counsel asked the jury to find that McCain acted in self-defense. *See* Tr.

Vol. III p. 63. McCain testified in his own defense that he was "scared" when Harris walked into the restaurant and pushed him and that he grabbed his cousin's gun because he was "scared." Tr. Vol. VII pp. 5, 6.

[7] After presentation of the evidence, the trial court held a conference with the attorneys to discuss final jury instructions. Defense counsel asked the trial court to instruct the jury on Level 2 felony voluntary manslaughter as a lesser-included offense of murder. *Id.* at 71-73; *see also* Ind. Code § 35-42-1-3 (providing that a person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter and explaining that sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter). The State did not object. During closing arguments, defense counsel mainly argued self-defense, only briefly mentioning sudden heat. Tr. Vol. VII pp. 129, 130. After closing arguments, the trial court read final instructions to the jury.

[8] Thereafter, the jury found McCain guilty of voluntary manslaughter. McCain then "waive[d] jury trial" on the firearm enhancement, and the jury was excused. *Id.* at 166. As the trial court was about ready to start the firearm-enhancement phase, the State pointed out that the charging information for the enhancement alleged that McCain used a firearm in the commission of murder, not voluntary manslaughter. However, the State argued that this did not matter because voluntary manslaughter was "still a qualifying offense" under Section 35-50-2-11(b). *Id.* at 164. The State then asked the court if it should amend the charging information to say voluntary manslaughter instead of murder.

Defense counsel argued that it did not receive fair notice that the State was going to pursue the firearm enhancement for voluntary manslaughter and asked the court to find McCain "not guilty on the enhancement." *Id.* at 170. The trial court took the matter under advisement.

[9] In later announcing its decision, the trial court stated that the issue was whether McCain "had notice to be able to prepare a defense" and that McCain indeed had notice, as he was the one who asked for the voluntary-manslaughter instruction at the end of trial, voluntary manslaughter is an inherently included offense of murder, and defense counsel conceded that he had no defense to the firearm enhancement if McCain was convicted of murder. *Id.* at 186. Finding that there was "no blind-siding here that took place if [McCain] got convicted of voluntary manslaughter," the court entered judgment of conviction against McCain on the firearm enhancement. *Id.* at 187. Also during this time, the court made several comments that it disagreed with the jury's verdict, saying, for example, "It was the clearest case of . . . cold-blooded murder I've seen in high definition in 32 years" and "[t]he voluntary manslaughter verdict was a gift." *Id.* at 186.

[10] McCain's sentencing hearing was held in April 2019. At the hearing, the trial court continued to make comments that it disagreed with the jury's verdict, saying, for example, "The words that the video spoke to me w[ere] cold blooded and callous" and "that was the cleanest cut video I have ever seen of my impression of a murder." Tr. Vol. VIII pp. 49, 51. The court identified numerous aggravators: (1) the shooting took place in a public environment with

fourteen people in close proximity; (2) there were two children present during the shooting; (3) the defendant endangered at least one other person who was within the trajectory of the bullet a couple of seconds before the shooting; (4) Harris "was shot at point-blank range with the gun placed to [his] temple"; (5) the nature of the shooting was "particularly cold-blooded and callous despite the fact that [McCain] was convicted of Voluntary Manslaughter wherein heat of passion was found to be a mitigating circumstance"; (6) McCain has a criminal history, including two felony convictions; (7) McCain has previously been incarcerated for thirty days, "which has failed to deter him from a life of crime"; (8) McCain has seven to eight contacts with the criminal-justice system, "which reflect adversely on [his] character in that he is not able to live a law-abiding life;" (9) a Facebook post from McCain adversely reflects on his character, as it shows that he invites "violence or conflict": "ni**as kno fu**ing wit me sh** can get wicked"; and (10) McCain is in need of correctional or rehabilitative treatment that can only be provided by a penal facility. Appellant's App. Vol. III pp. 142-43; Tr. Vol. VIII p. 48; Sentencing Ex. A. The court identified several mitigators: (1) McCain expressed remorse; (2) approximately thirty people submitted letters on McCain's behalf; however, the court didn't give this much weight because some of the letters described McCain as "peacemaking" but he didn't use those skills on the night of the shooting; (3) McCain has a two-year-old child; however, the court didn't give this much weight either because McCain wasn't court-ordered to pay support for his child; and (4) McCain completed some courses in jail, which was "somewhat of a mitigating factor." Appellant's App. Vol. III pp. 143-44; Tr.

Vol. VIII pp. 45-47.  Although McCain proffered other mitigators, the court rejected them.  *See* Appellant's App. Vol. III pp. 143-44 (rejecting the proposed mitigators that the crime is unlikely to recur, that McCain is likely to respond favorably to short-term imprisonment, and that McCain accepted responsibility).  Near the end of its sentencing order, the court included the following statement:

> For the record, . . . the high-definition video, from the Court's perspective, depicts a cold-blooded callous execution type shooting.  The Court acknowledges that the jury found the defendant guilty of Voluntary Manslaughter.  To be clear, the Court is not assessing this sentencing as that of a murder case or using the factors of a murder to elevate the sentence of Voluntary Manslaughter.  In other words, the Court is not punishing the defendant for the crime of Murder in the Voluntary Manslaughter sentence.  However, the manner in which the defendant used the gun in such a callous nature as depicted in the video, speaks for itself.

*Id.* at 144.  Finding that the aggravators "substantially" outweigh the mitigators, Tr. Vol. VIII p. 54, the court sentenced McCain to twenty-seven years for voluntary manslaughter (three years shy of the maximum, *see* Ind. Code § 35-50-2-4.5) enhanced by eighteen years for using a firearm (two years shy of the maximum, *see* I.C. § 35-50-2-11(g)), for a total sentence of forty-five years (which is the minimum sentence for murder, *see* Ind. Code § 35-50-2-3).

[11]  McCain now appeals.

# Discussion and Decision

## I. Firearm Enhancement

[12] McCain first contends that the trial court erred in imposing the firearm enhancement because he was acquitted of the offense (murder) that was alleged in the charging information for the enhancement. As set forth above, the charging information for the firearm enhancement provides as follows:

> Marcus Lee McCain did knowingly or intentionally use a firearm in the commission of the offense of Murder, contrary to I.C. 35-50-2-11(d).

*Id.* at 42. McCain argues that because the State specifically used "Murder" in the charging information—as opposed to using the general statutory language of "a felony under IC 35-42 that resulted in death or serious bodily injury"—and McCain was acquitted of murder, the court could not impose the firearm enhancement. Appellant's Br. pp. 17-18.

[13] McCain makes various arguments why we should vacate his firearm enhancement. We find no merit to any of them. Notably, McCain doesn't dispute that (1) voluntary manslaughter qualifies for the firearm enhancement under Section 35-50-2-11(b) because it is "a felony under IC 35-42 that resulted in death"; (2) voluntary manslaughter is simply murder mitigated by evidence of sudden heat, *see, e.g., Brantley v. State*, 91 N.E.3d 566, 572 (Ind. 2018), *reh'g denied, cert. denied*; and (3) he used a firearm to kill Harris. To the extent McCain claims he didn't have notice that the State was going to pursue the

firearm enhancement for voluntary manslaughter, he is the one who asked for the voluntary-manslaughter instruction at the final-instructions conference. Up until that point, this was a murder/self-defense case only. The trial court did not err in imposing the firearm enhancement.[1]

# II. Sentencing

[14]  McCain next contends that the trial court "impermissibly enhanced [his] sentence based on an offense for which [he] was acquitted." Appellant's Br. p. 34. "While a trial judge is not prohibited from expressing his personal disagreement with a jury's verdict, a trial judge is prohibited from enhancing a defendant's sentence based upon his personal disagreement with the verdict." *Hamman v. State*, 504 N.E.2d 276, 278 (Ind. 1987). It is no secret here that the trial judge disagreed with the jury's verdict. After the jury was excused, the judge made several comments about the jury's voluntary-manslaughter verdict:

- "I didn't see any sudden heat. It was the clearest case of, I'd say, cold-blooded murder I've seen in high definition in 32 years. The only sudden heat comes in from your client's testimony that he was angry, which I don't know that I believe to be credible." Tr. Vol. VII pp. 186-87.

- "The voluntary manslaughter verdict was a gift." *Id.* at 187.

---

[1] Although this argument could have been avoided if the State had simply alleged in the firearm-enhancement charging information that McCain knowingly or intentionally used a firearm in the commission of "a felony under IC 35-42 that resulted in death or serious bodily injury," we find no error given the facts of this case.

- "I don't know what your defense is.  Your client is on video with a gun shooting the victim in the head at point-blank range. . . .  Whether you want to call it voluntary manslaughter or murder, that's up to you." *Id.*

- "[I]t's the most perfectly placed shot you can put to kill somebody.  The words that the video spoke to me w[ere] cold blooded and callous."  Tr. Vol. VIII p. 49.

- Describing the video as "the cleanest cut video I have ever seen of my impression of a murder."  *Id.* at 51.

- "Mr. McCain, your attorneys did their job for you and minimized your exposure to prison time by obtaining a voluntary manslaughter verdict for you.  But when I look at the video, it appears to me to be an execution-type killing."  *Id.* at 53.

[15]  Notwithstanding these comments, the judge included a statement at the end of its sentencing order that although the video "depicted a cold-blooded callous execution type shooting," he was "not punishing McCain for the crime of Murder in the Voluntary Manslaughter sentence."  But the judge did punish McCain for the crime of murder, at least in part.  Sudden heat exists when a defendant is provoked by anger, rage, resentment, or terror to a degree sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection.  *Brantley*, 91 N.E.3d at 572.  Although the jury found the existence of sudden heat, the judge found as an aggravator that the killing was "cold-blooded" and "callous."  The judge's finding that the killing was "**cold**-blooded" is clearly at odds with the jury's finding that the killing was done in sudden **heat**.  When a jury finds a

defendant guilty of voluntary manslaughter, aggravators like "cold-blooded" and "callous" are improper as a matter of law. In addition, we note that the judge crafted its sentence so that McCain was sentenced to exactly forty-five years, the minimum sentence for murder. It is apparent that the judge enhanced McCain's sentence, in part, to compensate for what he believed to be an erroneous verdict. *See Gambill v. State*, 436 N.E.2d 301, 305 (Ind. 1982).

[16] When a trial court relies on an improper aggravator, an appellate court has several options, including (1) remanding the case to the trial court for a new sentencing determination or (2) exercising our authority to review and revise the sentence pursuant to Indiana Appellate Rule 7(B). *Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007)*, reh'g denied*. We find that the first option is not appropriate here given the trial judge's outspoken disagreement with the jury's verdict. *See Phelps v. State*, 24 N.E.3d 525, 528 (Ind. Ct. App. 2015) ("We believe, however, that the presence of aggravating circumstances justifying an enhanced sentence does not wash away the stain left by a trial court's blatant disagreement with the jury verdict at sentencing."). Accordingly, we choose the second option.

[17] McCain asks us to reduce his sentence to the advisory term of seventeen-and-a-half years for voluntary manslaughter and the minimum enhancement of five years for using a firearm, for a total sentence of twenty-two-and-a-half years. We think a reduction is appropriate, but not one that significant.

[18] We agree with McCain that his criminal history is not particularly weighty or similar to the present offense to justify an enhanced sentence. Although McCain, who was thirty years old at the time of sentencing, has prior convictions, they are mostly related to marijuana (two felonies for manufacture/deliver THC, one misdemeanor for possession of THC, and one misdemeanor for disorderly conduct). In addition, McCain's longest period of incarceration before the shooting was thirty days. But what is particularly troubling about this shooting is that it occurred in a restaurant with numerous people present, including two young children. Moreover, as the trial court noted, although Harris was the first to push McCain, McCain had several opportunities to leave the restaurant but didn't. *See* Appellant's App. Vol. III p. 143 ("[T]he defendant had three (3) opportunities to leave the restaurant and use his 'peace making skills' to avoid the killing of the victim, which the defendant failed to avoid."). These circumstances justify an enhanced sentence. We therefore remand this case with instructions that McCain's sentence be vacated and that the trial court sentence him to thirty-five years: twenty-five years for voluntary manslaughter enhanced by ten years for using a firearm.

[19] Affirmed in part, reversed and remanded in part.

Najam, J., concurs.

Tavitas, J., concurring in part and dissenting in part, with separate opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marcus Lee McCain, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 19A-CR-1113 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff* | |

**Tavitas, Judge, concurring in part and dissenting in part.**

[20] I respectfully concur in part and dissent in part.

[21] I agree with the outcome of the majority's decision regarding the gun enhancement. There was a variance here between the charging information and the evidence presented. Our Supreme Court has held:

> Because the charging information advises a defendant of the accusations against him, the allegations in the pleading and the evidence used at trial must be consistent with one another. *Simmons v. State,* 585 N.E.2d 1341, 1344 (Ind. Ct. App. 1992). A variance is an essential difference between the two. *Mitchem v. State,* 685 N.E.2d 671, 677 (Ind. 1997). Not all variances, however, are fatal. *Id.* Relief is required only if the variance (1) misled the defendant in preparing a defense, resulting in prejudice, or (2) leaves the defendant vulnerable to future prosecution under the same evidence. *Winn v. State,* 748 N.E.2d 352, 356 (Ind. 2001).

*Blount v. State*, 22 N.E.3d 559, 569 (Ind. 2014).

[22]   Both murder and voluntary manslaughter fell within the offenses listed in the gun enhancement statute. Moreover, McCain requested the voluntary manslaughter instruction as a lesser included offense of murder. McCain should not have been surprised or misled by the variance, and his defenses did not change. The variance also did not leave McCain vulnerable to future prosecution under the same evidence.

[23]   As for the reduction in McCain's sentence, I respectfully disagree. I acknowledge the trial court's statements, which are quoted in the majority's opinion. The trial court, however, also stated in its sentencing order:

> The Court acknowledges that the jury found the defendant guilty of Voluntary Manslaughter. To be clear, the Court is not assessing this sentencing as that of a murder case or using the factors of a murder to elevate the sentence of Voluntary Manslaughter. In other words, the Court is not punishing the defendant for the crime of Murder in the Voluntary Manslaughter sentence. However, the manner in which the defendant used the gun in such a callous nature as depicted in the video, speaks for itself.

Appellant's App. Vol. III p. 147. In determining McCain's sentence, the trial court specifically identified numerous aggravators and several mitigators and found that the aggravators outweighed the mitigators. The trial court then sentenced McCain to a total of forty-five years in the DOC, which is five years less than the maximum possible sentence.

[24] The majority relies on *Gambill v. State*, 436 N.E.2d 301 (Ind. 1982), which I find distinguishable. In *Gambill*, although the defendant was charged with murder, he was convicted of voluntary manslaughter. At sentencing, the trial court stated:

> "I think that there are some statutory aggravating circumstances. I think that the evidence shows that the defendant is in need of correctional or rehabilitative treatment that can be best provided by his commitment to a penal facility, and I think an imposition of a reduced sentence or a suspension of the sentence and imposition of probation would depreciate the seriousness of the crime. So, there are those things here in my judgment.

> "* * * I think the facts of the occurrence justify, and the evidence would justify a conviction of murder. I think in fact that was the offense committed. The jury, as it had a right to do, returned a verdict of voluntary manslaughter for whatever reason, and I think it was not the right verdict. Further than that I think the police did an exemplary job of developing this case."

*Gambill*, 436 N.E.2d at 304.

[25] Our Supreme Court took issue with the trial court's sentencing because the trial court's statement was "deficient in that it merely repeats the conclusory language of Ind. Code s 35-4.1-4-3 (35-50-1A-3) (Burns 1979) without stating the facts through which the conclusions were reached." *Id.*

> The trial court's statement of reasons for imposing an enhanced sentence fails to provide this Court with facts enabling it to draw a conclusion as to the reasonableness of the sentence. More importantly, it also manifests that the trial court enhanced the sentence by reason of a consideration that is beyond the pale of

his authority. * * * * * It is clear that the trial court enhanced the sentence to compensate for what he believed to be an erroneous verdict. In so doing, he invaded the province of the jury.

*Id.* at 304-05.

[26] Unlike *Gambill*, this trial court entered a very detailed sentencing statement with numerous valid aggravators. The trial court also specifically stated that it was "not assessing this sentencing as that of a murder case or using the factors of a murder to elevate the sentence of Voluntary Manslaughter." Appellant's App. Vol. III p. 147. Accordingly, I find *Gambill* distinguishable.

[27] I find this case is more like our Supreme Court's opinion in *Wilson v. State*, 458 N.E.2d 654, 656 (Ind. 1984), which our Supreme Court decided after *Gambill*. As in *Gambill*, the defendant in *Wilson* was charged with murder and convicted of voluntary manslaughter. At sentencing, the trial court stated:

> "All right, Mr. Wilson, stand to the microphone. This was a brutal killing. You face, when you went into trial, you faced a maximum of sixty (60) years for this, minimum of thirty (30) years.
>
> Your lawyer performed brillantly (sic) and got you substantially less. It does not change the brutal nature of this killing. To give the minimum sentence in this case would be a terrible thing for me to do. It would be a terrible thing to you. It would be a terrible thing to me. I couldn't live with myself do (sic) that.
>
> Now, there are a number of things that we have to do to filter out the personal feelings in sentencing. There shouldn't be any vindictiveness on my part when I sentence you; so we establish

standards to filter out those personal feelings from the sentencing process.

There are two (2) aggravating factors I find[:] one that was imposition of a reduced sentence would depreciate the seriousness of the crime; and the other aggravating factor is that the victim of the crime was infirm in that she was an unarmed woman in a confrontation with an armed man.

There are no mitigating factors.

The finding that the jury made on sudden heat was an attribute to your lawyer. He is so good that that jury just couldn't find against him on those facts except voluntary manslaughter, and they gave you every benefit of every possible break they could look for and find. But there are no mitigating factors.

I'm not taking it into consideration perceived perjury as was approved in *Wolf v. State*, perceived perjury has to be so blatant and so clear on the record that . . . there can be no argument about it. That's not necessarily the case here. And again you get the benefit of the doubt because it is not clear perjury.

In assessing additional penalty for the aggravating factors, I find that additional five (5) years to the presumptive sentence is adequate. For that reason, you're now sentenced to the Department of Corrections for classification and confinement in a maximum security facility for a period of fifteen (15) years. Costs are assessed against the defendant.

There are no mitigating factors. There are two (2) aggravating factors that I have previously mentioned."

*Wilson*, 458 N.E.2d at 655-56.

[28]     On appeal, our Supreme Court held:

> In the case now before us the judge does entertain a degree of
> skepticism regarding the evidence of sudden heat and the success
> which defense counsel had with the jury through use of his
> persuasive talents.  He is not however so resolutely opposed to
> the jury verdict as was the case in *Gambill*.  Consequently we find
> that the statements of the trial judge were within the proper scope
> of his authority to make an evaluative statement of the
> circumstances surrounding the crime, and did not constitute an
> invasion of the province of the jury or render the enhancement
> suspect.

*Id.* at 656.

[29]     As in *Wilson*, although the trial court did make some statements expressing
skepticism of the voluntary manslaughter conviction, I find nothing improper
regarding the trial court's actual sentencing of McCain.  Discussing the brutal
nature of McCain's offense is part of the review the trial court may properly
perform; the trial court may consider the nature of the offense in imposing a
sentence.  *See* Ind. Code 35-38-1-7.1(c); *Gomillia v. State*, 13 N.E.3d 846, 853
(Ind. 2014) ("Generally, the nature and circumstances of a crime is a proper
aggravating circumstance.").  The trial court was very specific regarding the
aggravators and mitigators in this case.  The trial court made it clear that it was
following the law and basing the sentence upon those aggravators and
mitigators.  As in *Wilson*, given the nature and circumstances of this voluntary
manslaughter offense, McCain's prior two felony convictions, and the other
proper aggravators and mitigators, I do not find that the trial court abused its

discretion, especially in light of the fact that the trial court did not impose the maximum sentence. Moreover, I do not find this sentence inappropriate. I would affirm.