

FILED

Apr 26 2018, 8:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael J. Kyle
Baldwin Kyle & Kamish, P.C.
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Keith A. Laughlin, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | April 26, 2018 <br><br> Court of Appeals Case No. <br> 41A01-1708-CR-1817 <br><br> Appeal from the Johnson Superior Court <br><br> The Honorable Cynthia Emkes, Judge <br><br> Trial Court Cause No. <br> 41D02-1501-F6-41 |

**May, Judge.**

[1] Keith A. Laughlin appeals his conviction of Level 6 felony intimidation where the threat is to commit a forcible felony.[1] He argues the State did not present sufficient evidence: (1) he intended to cause the Johnson County Courthouse to be evacuated, and (2) he threatened to commit a forcible felony. We affirm.

## Facts and Procedural History[2]

[2] At approximately 5:00 p.m. on Saturday, January 17, 2015, Laughlin called in a "bomb threat at the Johnson County Courthouse." (Tr. Vol. II at 6.) Laughlin called again later and asked, "Did you find the bomb? . . . You have ten minutes to respond." (State's Ex. 2 at 00:00:27 - 00:00:46.) Laughlin called a total of six times; some of the calls were hang up calls and in some calls Laughlin's speech was unintelligible. The 911 dispatcher was able to determine via Caller ID that the calls came from a telephone number owned by Laughlin.

[3] Detective James Bryant went to the Johnson County Courthouse and, along with four or five other officers, inspected the premises to make sure there was not a bomb. Police were able to locate the geographical source of Laughlin's calls using a two-phase system that pinpoints, first, the location of the cell tower accessed and, second, the more precise address from which the calls were made.

---

[1] Ind. Code § 35-45-2-1(b)(1)(A) (2014).

[2] We held oral argument on this case on April 3, 2018, at the University of Southern Indiana. We thank the University for its hospitality and counsel for their able presentations. We also would like to thank USI President Linda L.M. Bennett for her continued support and wish her well in her retirement.

Once the Courthouse was clear, Detective Bryant went to the address identified by the two-phase system, and Angela Bryant[3] answered the door. Detective Bryant inquired about Laughlin, Angela indicated Laughlin was in the back room of the house, and officers found him there. Detective Bryant interviewed Laughlin and Angela. Detective Bryant then reviewed the 911 tapes and arrested Laughlin based on Detective Bryant's belief Laughlin made the calls because Laughlin has a "unique voice." (Tr. Vol. II at 22.)

[4] On January 21, 2015, the State charged Laughlin with Level 6 felony intimidation where the threat is to commit a forcible felony. After a bench trial on May 24, 2017, the trial court entered a conviction as charged. On July 12, 2017, the trial court sentenced Laughlin to two years, which the court suspended.

# Discussion and Decision

[5] When reviewing sufficiency of the evidence in support of a conviction, we will consider only probative evidence in the light most favorable to the trial court's judgment. *Binkley v. State*, 654 N.E.2d 736, 737 (Ind. 1995), *reh'g denied*. The

---

[3] Angela is unrelated to Detective Bryant. Previously, Angela's legal first name was Ricky. The State refers to Angela as "Angela" and uses she/her pronouns, (*see* Tr. Vol. II at 22), while Laughlin refers to Angela as "Ricky" and uses he/him pronouns in his testimony before the court, (*see id*. at 40), but Laughlin calls her "Angela" and uses she/her pronouns in his interview with Detective Bryant recorded the day of the crime. (*See* State's Ex. 3.) We will refer to her as "Angela."

decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Id.*

[6] We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[7] To prove Laughlin committed Level 6 felony intimidation where the threat is to commit a forcible felony, the State had to provide evidence that Laughlin: (1) communicated a threat; (2) to another person; (3) with the intent of causing the evacuation of a dwelling, building, or other structure; (4) and the threat was to commit a forcible felony. Ind. Code § 35-45-2-1(b)(1)(A) (2014). Laughlin argues the State did not present evidence he intended the Johnson County Courthouse to be evacuated because he called in a bomb threat at a time when the Courthouse would be unoccupied. He also argues the State did not present sufficient evidence that he threatened a forcible felony.

## Intent to Cause Evacuation

[8] "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2. "[I]ntent is a mental function and without a confession, it must be determined

from a consideration of the conduct, and the natural consequences of the conduct." *Duren v. State*, 720 N.E.2d 1198, 1202 (Ind. Ct. App. 1999), *trans. denied*. Accordingly, intent often must be proven by circumstantial evidence. *Id*. The trier of fact is entitled to infer intent from the surrounding circumstances. *White v. State*, 772 N.E.2d 408, 412 (Ind. 2002).

[9] Laughlin called Johnson County 911 at approximately 5:00 p.m. on a Saturday. Laughlin argues that, because he believed the Courthouse to be unoccupied at that time, the evidence demonstrates he intended "to harass the police and force the police to enter an empty courthouse[;]" not "to evacuate a full courthouse." (Br. of Appellant at 8.) Laughlin asserts the element would have been satisfied if "[t]he call took place during normal business hours," (*id*.), because then it would be clear the intent of the call was to evacuate the building. Because there was no evidence the building was occupied at the time he called in the bomb threat, Laughlin argues, it was not his intent for the building to be evacuated and, thus, his conviction should be reversed.

[10] Laughlin's case was tried before the bench. In bench trials, we assume the judge knows and follows the applicable law. *Leggs v. State*, 966 N.E.2d 204, 208 (Ind. Ct. App. 2012). Here, the State presented evidence from which the trial court could conclude Laughlin knew the natural consequence of his behavior would be an evacuation of the building.[4] Laughlin called 911 multiple times, at

---

[4] Laughlin asserts he could not have intended "evacuation" because his threats were made on Saturday afternoon. However, the occurrence of an "evacuation" is not defined by the number of people who must

one point asking the operator, "Did you find the bomb? . . . You have ten minutes to respond." (State's Ex. 2 at 00:00:27 - 00:00:46.) Detective Bryant testified officers were dispatched to the Courthouse, searched the Courthouse for an explosive device, and ensured no one was in the building.

[11] It is reasonable for the fact finder to infer Laughlin intended for his calls to result in the police needing to evacuate the Courthouse based on his repeated calls and question regarding whether police had located the device. Laughlin's argument is an invitation for us to reweigh the evidence, which we cannot do. *See Hendrix v. State*, 615 N.E.2d 483, 486 (Ind. Ct. App. 1993) (declining to reverse based on appellant's argument regarding intent required to prove intimidation, which was an invitation to reweigh the evidence).

## Threat to Commit Forcible Felony

[12] Indiana Code defines a forcible felony as "a felony that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being." Ind. Code § 35-31.5-2-138 (2012). Indiana Code defines a bomb as "an explosive or incendiary device designed to release: (1) destructive materials or force; or (2) dangerous gases; that is detonated by

---

exit the building; it is defined by the state in which the building remains after the occurrence. An evacuated building is one that has been rendered empty or vacant. *See* Evacuate, <u>Merriam-Webster Dictionary</u>, <u>https://www.merriam-webster.com/dictionary/evacuate</u> (last accessed April 12, 2018). The simple fact that a Courthouse is not open for business does not guarantee that building is empty; thus, regardless when a bomb threat is made, police still must take all necessary steps to ensure no one is in a threatened building. An evacuation must occur.

impact, proximity to object, a timing mechanism, a chemical reaction, ignition, or other predetermined means." Ind. Code § 35-31.5-2-31 (2012).

[13] Laughlin argues there was "no evidence that [he] threatened the use of force against a human being." (Br. of Appellant at 8.) He also contends he did not indicate at any time he intended to detonate a bomb inside the Johnson County Courthouse, and therefore, the State did not present evidence he threatened to commit a forcible felony as required to enhance intimidation from a Class A misdemeanor to a Level 6 felony. *See* Ind. Code § 35-45-2-1(b)(1)(A) (element of threat of commission of a forcible felony required to elevate intimidation to Level 6 felony).

[14] "[T]hreats of potential, nonspecific violence constitute a threat to commit a forcible felony." *Huber v. State*, 805 N.E.2d 887, 891 (Ind. Ct. App. 2004). In *Huber*, we held the State presented sufficient evidence Huber committed Class D[5] felony intimidation when it presented evidence he called a domestic violence advocate and stated that "things were not going to be real pretty," (*id*.), if the advocate continued working with Huber's wife. Similarly, Laughlin stated in one of his 911 calls, "Did you find the bomb? . . . You have ten minutes to respond." (State's Ex. 2 at 00:00:27 - 00:00:46.) That imposition of a time limit could be construed to mean Laughlin intended to detonate the bomb in ten

---

[5] The relevant language of Indiana Code section 35-45-2-1 (2003), under which Huber was convicted, is the same as the language in the statute under which Laughlin was convicted.

minutes if police did not respond, which is a threat to use force. *See Huber*, 805 N.E.2d at 891.

[15] As for whether Laughlin's threat of force was "against a human being," (Appellant's Br. at 8), we note the statutory definition of forcible felony provides the threat may be against a human being or the threat may create "imminent danger of bodily injury to a human being." Ind. Code § 35-31.5-2-138 (2012). Even if Laughlin believed the Courthouse was not occupied, such that he did not threaten a specific human being, the Johnson County Courthouse is situated in downtown Franklin, Indiana, where many shops and restaurants operate. At 5:00 p.m. on a Saturday afternoon, pedestrians could be walking in the vicinity of the Courthouse. Thus, it is reasonable to infer that if Laughlin had detonated a bomb in the Courthouse, someone either inside the Courthouse or within the vicinity of the Courthouse would have been in "imminent danger of bodily injury." I.C. § 35-31.5-2-138. Laughlin's argument is an invitation for us to reweigh the evidence, which we cannot do. *See Hobson v. State*, 957 N.E.2d 1031, 1032 (Ind. Ct. App. 2011) (rejecting appellant's argument, which was an invitation to reweigh the evidence).

# Conclusion

[16] The State presented sufficient evidence of Laughlin's intent to have police evacuate the Johnson County Courthouse when he called multiple bomb threats to 911. Additionally, the State presented sufficient evidence Laughlin's threat was to commit a forcible felony because his statement that police had ten

minutes to respond to him indicated he intended to detonate a bomb in an area likely populated by pedestrians. Accordingly, we affirm.

[17] Affirmed.

Baker, J., and Altice, J., concur.