## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 20 2020, 9:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah K. Smith
Sugar Creek Law
Thorntown, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Elizabeth K. Cote, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 20, 2020 <br><br> Court of Appeals Case No. <br> 18A-CR-2942 <br><br> Appeal from the Boone Circuit Court <br><br> The Honorable J. Jeffrey Edens, Judge <br><br> Trial Court Cause No. <br> 06C01-1709-CM-1744 |

**May, Judge.**

[1] Elizabeth Cote appeals her conviction of Class B misdemeanor harassment.[1] Elizabeth argues the State did not present sufficient evidence that she had no intent of legitimate conversation with the victim of her offense, Julia Cote. We affirm.

# Facts and Procedural History

[2] Elizabeth Cote is Andrew Cote's mother. Andrew is married to Julia. On June 1, 2017, Elizabeth sent Andrew a series of voicemails and text messages about Elizabeth's car, which Andrew had in his possession, and about an alleged debt Andrew owed to Elizabeth. Andrew called Elizabeth, but the conversation ended in an argument and Andrew hung up on Elizabeth. Julia was present during the call and could hear the call. Julia also heard the voicemails and read the text messages.

[3] Later in the day, Julia sent Elizabeth a text message telling Elizabeth to "[l]eave [her and Andrew] alone!!!" (State's Ex. 1.) Elizabeth responded to Julia's text with a series of texts containing multiple obscenities regarding an alleged debt that Andrew and Julia owed to Elizabeth. Later in the conversation, Elizabeth sent Julia a text message that said, "No You got PREGNANT BY A BIGGER AND YOUR A WET BACK SAY SOMETHING AT LEAST I PAY MY BILLS AND CAN TAKE CARE I'D MYSELF YOU FUCK ING

---

[1] Ind. Code § 35-45-2-2(a)(2).

PARASITE…….WHORE[.]" (State's Ex. 3) (errors and emphasis in original). Julia responded, and Elizabeth sent a text message stating, "Text Me again find out what happens YOU DIRTY FUCK ING MEXICAN YEAH YOUR FUCK ING FILTHY[.]" (State's Ex. 4) (errors and emphasis in original).

[4] Julia sent Elizabeth two text messages saying, "Are you threatening me? And I'm not a Mexican bro." (*Id*.) Elizabeth responded,

> You are A FUCK ING IDIOT AND YEAH YOU ARE A WET BACK MEXICAN…..AGAIN TALKING SHIT YOU KNOW NOTHING ABOUT …..RETARDED…..YOU FUCK OVER EVERYONE YOU COME IN CONTACT WITH……THAT'S WHY YOUR CREDIT SUCKS…….YOU FILTHY P.O.S…….YOU KNOW NOTHING ABOUT ANDREW. HE WILL TIRE OF YOUR BULLSHIT AND KEEPING THAT'S HOW YOU TRY TO GET OUT OF PAYING PEOPLE…….THAT'S, BECAUSE YOU ARE NASTY DIRTY FUCKING MEXICAN…….AND EVERYBODY IN LEBANON SAYS YOU ARE….."

(State's Ex. 4-6) (errors and emphasis in original). Elizabeth then sent Julia a text threatening to file charges against Julia for stalking and blocked Julia's telephone number from Elizabeth's cell phone.

[5] Andrew and Julia reported the messages to the police because "Andrew[] was getting ready to leave for the military for A-T for two weeks, and [Julia] had his nephews over and our concern was that [Elizabeth] may have um would've done something that would have injured us or the kids[.]" (Tr. Vol. II at 14.) On September 18, 2017, the State charged Elizabeth with Class B misdemeanor

harassment. On October 26, 2018, the trial court conducted a bench trial, and on November 6, 2018, the trial court issued its order finding Elizabeth guilty of Class B misdemeanor harassment. In its order, the trial court quoted the portion of the text conversation between Elizabeth and Julia from State's Exhibits 3-6, quoted *supra*, and stated:

> 23. [Julia] is not of a Mexican heritage.

> 24. [Julia] did not inject her heritage into the conversation.

> 25. Without question, that part of the conversation quoted above was not legitimate communication on the part of [Elizabeth].

> 26. [Julia] was alarmed by the tone of the conversation.

> * * * * *

> 29. The only reasonable conclusion the Court can make is that [Elizabeth] made the comments quoted above with the intent to harass annoy or alarm [Julia].

(App. Vol. I at 13-4.) At the sentencing hearing on November 29, 2018, the trial court ordered Elizabeth to pay $185 in court costs but did not sentence her to jail time or probation.

# Discussion and Decision

When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the

fact-finder's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the fact-finder's verdict. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the fact-finder's decision. *Id.* at 147.

[7] To prove Elizabeth committed Class B misdemeanor harassment, the State was required to present evidence that she "with intent to harass, annoy, or alarm another person but with no intent of legitimate communication . . . communicates with a person by telegraph, mail, or other form of written communication[.]" Ind. Code § 35-42-2-2(a)(2). Elizabeth argues the State did not prove she had "no intent of legitimate communication" because "the theme of the conversation references the debt owed to [Elizabeth] and the lack of effort on the part of Andrew and Julia to repay the money." (Br. of Appellant at 11.)

[8] However, the trial court provided a very detailed order in which it specifically stated that it considered Elizabeth's comments regarding Julia's alleged heritage when it found Elizabeth guilty of Class B misdemeanor harassment. The trial court referenced the portions of the conversation in which Elizabeth told Julia that Julia and Andrew owed Elizabeth money, but the trial court explicitly

stated that it did not base Elizabeth's conviction on that portion of the conversation. Elizabeth's argument asks us to consider the conversation as a whole, instead of relying on the portion of the conversation the trial court found to be harassment. We cannot reweigh evidence or judge the credibility of a witness on appeal, *Drane*, 867 N.E.2d at 146, and thus we decline her invitation to do so.

[9] Further, this case was tried to the bench, and we presume the judge knows and properly applies the relevant law to the facts of the case. *Laughlin v. State*, 101 N.E.3d 827, 830 (Ind. Ct. App. 2018). Based thereon, we conclude the State presented sufficient evidence that Elizabeth committed Class B misdemeanor harassment. *See Kinney v. State*, 404 N.E.2d 49, 50 (Ind. Ct. App. 1980) (affirming Kinney's conviction of Class B misdemeanor harassment based on a series of calls in which Kinney accused the victim of "promiscuous sexual behavior" and "[n]o personal or business transactions occurred during these phone calls").

# Conclusion

[10] The State presented sufficient evidence that Elizabeth committed Class B misdemeanor harassment. Accordingly, we affirm.

[11] Affirmed.

Mathias, J., and Brown, J., concur.