

# IN THE
# Court of Appeals of Indiana

Jackson Porter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*



FILED
Nov 21 2025, 9:13 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

November 21, 2025

Court of Appeals Case No.
25A-CR-835

Appeal from the
Marion Superior Court

The Honorable
Michelle Waymire, Magistrate

Trial Court Cause No.
49D29-2305-MR-15157

**Opinion by Senior Judge Robb**
Judges Pyle and Scheele concur.

**Robb, Senior Judge.**

## Statement of the Case

Jackson Porter appeals the trial court's judgment that he is guilty of murdering his former roommate, Alex Bohman. During the bench trial, Porter raised defenses of: (1) self-defense under the effects of battery statute; and (2) killing Bohman while under the effect of sudden heat, which, if successful, would have resulted in a conviction of voluntary manslaughter rather than murder. Porter claims that the trial court may have misapplied the effects of battery statute. He also argues that the State failed to present sufficient evidence to disprove sudden heat. Concluding that Porter has failed to show trial court error, and that the State presented sufficient evidence, we affirm.

## Facts and Procedural History

Porter and Alex Bohman became acquaintances in 2020 or 2021. Both men were in their early twenties. In November 2022, Porter moved into Bohman's apartment in Beech Grove, Indiana. Bohman sold marijuana products. He did not have a driver's license, and he paid Porter to assist him with deliveries.

Their relationship was marked by frequent arguments, and a friend of both men, Caleb Serban, later said that Bohman tried to control Porter. On two occasions, Bohman made Porter submit to humiliating acts when he had insufficient funds to pay his share of the rent. Once, Bohman made Porter wear only women's underwear in front of Bohman, Serban, and Porter's then-girlfriend. Another time, Bohman inserted a tampon into Porter's rectum. On

another occasion, Serban heard Bohman hit Porter several times while the three men were playing a video game in the apartment.

[4] Porter wanted to quit working for Bohman, but Bohman threatened to shoot him when he said he wanted to stop. Bohman continued to threaten Porter's life whenever Porter talked about quitting. Porter moved out of the apartment two to three weeks before the murder, but he continued to visit Bohman's apartment and assist with marijuana deliveries. On May 17, while Porter was with Bohman, Bohman became upset and said he was "on the edge of killing everybody." Tr. Vol. 2, p. 171.

[5] On the morning of May 18, Porter bought a handgun and ammunition. That afternoon, he went to Bohman's apartment. Shortly after 2:30, Porter called 911 to report a person had been shot. When officers arrived at the apartment, Porter was waiting outside. An officer arrested him while other officers secured the apartment. They found Bohman's body on a couch in the living room, which was next to a dining area. Porter's handgun was on a chair near the front door.

[6] A crime scene specialist found twelve fired cartridge cases in the dining area. She searched Bohman's body and the couch, but she did not find a firearm or other weapon. Instead, she found a Glock handgun in Bohman's bedroom, on the bed.

[7] Meanwhile, detectives questioned Porter at the Beech Grove Police Department. Porter told the detectives that Bohman let him into the apartment,

and they watched videos together. Next, he went into the bathroom, where he put in earplugs, drew his handgun, and deactivated the safety. According to Porter, he exited the bathroom, pointed the handgun at Bohman, and told him he would not sell drugs anymore. Porter claimed Bohman reached for his right hip, possibly to draw a gun, so he shot Bohman ten times, emptying the clip. Porter told the detective that after he emptied the clip, Bohman shouted, "no, please." *Id.* at 131. But Porter said that he thought that Bohman was continuing to reach for a gun, so he reloaded his handgun, stepped closer, and shot him in the head several times.

[8] Porter denied having any arguments with Bohman earlier that day and reported that Bohman had not displayed his handgun while they watched videos. He also conceded he did not actually see Bohman pull out a handgun before shooting him, and he did not "know if he had even really had it or not." *Id.* at 135. Porter stated that he believed that Bohman owned only one handgun, a Glock.

[9] A forensic pathologist performed an autopsy on Bohman's body. The pathologist determined that Bohman had been shot thirteen times, with wounds to the face, the side of the head, the back side of the upper left arm, the pelvis, and the torso. Toxicology testing revealed that Bohman had metabolites of marijuana in his system.

[10] The State charged Porter with murder, a felony. Dr. Marc Martinez interviewed Porter. He determined Porter displayed no signs of mental illness

but did have deficits in judgment and decision-making. Dr. Jennifer Huffman conducted a neuropsychological evaluation of Porter and determined he was autistic. Among other impacts on functioning, Dr. Huffman determined Porter had a flat affect and had trouble recognizing and expressing his emotions. She also stated that Porter would have trouble solving problems in high pressure situations. Also, he might perceive threats to his well-being but might not be able to talk about it with others. In addition, testing revealed that Porter had depression, which affected how he processed information and understood the nuances of situations. Porter also had issues managing anger, and he used marijuana every day, which could have limited his ability to regulate his impulses.

[11] Porter filed a notice asserting self-defense, claiming he had acted under the effects of Bohman's past battery. He also waived his right to trial by jury, and the trial court held a bench trial. During closing arguments, Porter asked the trial court to consider voluntary manslaughter as a lesser included offense of murder, arguing that he killed Bohman while acting under sudden heat.

[12] The State did not dispute Bohman's history of abusing Porter. Instead, the State urged the trial court to accept Dr. Martinez's testimony rather than Dr. Huffman's testimony. The State also argued that Porter did not act in self-defense, stating that the court should not consider Porter's psychological condition in determining whether he perceived a threat from Bohman.

[13] The trial court stated as follows:

> After reviewing and listening to all the evidence in this case and weighing the testimony and credibility of the witnesses and the defendant's testimony, I find that the State has met its burden of proof and find the defendant, Jackson Porter, guilty of murder for the knowing killing of Alexander Bohman.
>
> The defendant in this case claimed at the time of the shooting he was suffering from the effects of battery as a result of past course of conduct of the victim, and thus use[d] justifiable, reasonable force in a claim of self-defense. I find that the evidence presented by the prosecution has negated said defense beyond a reasonable doubt.

Tr. Vol. 3, pp. 81-82. The court imposed a forty-five-year sentence. This appeal followed.

## Discussion and Decision

### I. Applying the Effects of Battery Statute

Porter claims this Court must reverse the trial court's judgment because the court may have misapplied the statutory standard for self-defense when a defendant acts under the effects of battery. We review de novo the trial court's resolution of legal questions. *Smith v. State*, 188 N.E.3d 63, 67 (Ind. Ct. App. 2022).

In bench trials, we presume that the trial court "knows and follows the applicable law." *Laughlin v. State*, 101 N.E.3d 827, 830 (Ind. Ct. App. 2018). The presumption may be rebutted if the trial court's oral remarks "disclose use of an erroneous standard with clarity and certainty[.]" *Moran v. State*, 622 N.E.2d 157, 159-60 (Ind. 1993). We may also consider a trial court's written

findings. *See, e.g., Hecht v. Hecht*, 142 N.E.3d 1022, 1031-32 (Ind. Ct. App. 2020) (reviewing trial court's findings and rejecting appellant's claim that trial court applied incorrect standard of law in custody dispute).

[16] We now turn to the effects of battery defense at the heart of Porter's claim. In connection with a claim of self-defense, a defendant may allege that "the defendant was at the time of the alleged crime suffering from the effects of battery as a result of the past course of conduct of the individual who is the victim of the alleged crime." Ind. Code § 35-41-3-11(b) (1997). The General Assembly has defined the effects of battery in relevant part as follows:

> a psychological condition of an individual who has suffered repeated physical or sexual abuse inflicted by another individual who is the:
>
> (1) victim of an alleged crime for which the abused individual is charged in a pending prosecution; and
>
> (2) abused individual's:
>
> * * * *
>
> (E) cohabitant or former cohabitant.

Ind. Code § 35-31.5-2-109 (2012).

[17] The statute that governs self-defense provides that a person may use deadly force, with no duty to retreat, "if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person[.]" Ind. Code § 35-41-3-2(c) (2019). The person must reasonably believe that the use of unlawful

force is "imminent." *Id.* And a person is not justified in using force if the person is "the initial aggressor." I.C. § 35-41-3-2(g). The State bears the burden of disproving a defendant's claim of self-defense. *Fuller v. State*, 261 N.E.3d 821, 826 (Ind. Ct. App. 2025), *trans. denied*.

[18] "[T]he phrase 'reasonably believes,' as used in the Indiana self-defense statute, requires both subjective belief that force was necessary to prevent serious bodily injury, and that such actual belief was one that a reasonable person would have under the circumstances." *Littler v. State*, 871 N.E.2d 276, 279 (Ind. 2007). When a defendant raises self-defense in conjunction with the effects of battery statute, the defendant may present evidence that "relates to the general reasonableness of one's apprehension of fear, given the psychological trauma which comes from battery." *Higginson v. State*, 183 N.E.3d 340, 345 (Ind. Ct. App. 2022).

[19] Porter argues that the trial court may have misapplied the effects of battery statute, but he does not point to anything the trial court said during trial or wrote in a document. Instead, Porter asserts the trial court may have been influenced by incorrect legal claims that the State presented during closing arguments. Specifically, the prosecutor argued that, when weighing whether Porter's fear of imminent force resulting in serious bodily injury was objectively reasonable, the court could not consider Porter's autism:

> And it is not what did the defendant think. It is are [sic] the
> defendant's actions compared to that of what a reasonable person
> would do in the same situation. And that reasonable person

> cannot change. It is not what would a reasonable person on the autism spectrum disorder [sic] have done. It is what would a reasonable person do.

Tr. Vol. 3, p. 68. Porter argues that the prosecutor's statement is wrong because a defendant's psychological trauma from a past battery is a relevant consideration when determining whether the defendant's fear of imminent violence was objectively reasonable. Appellant's Br. p. 21.

[20] The State does not deny that the prosecutor erred in describing how the effects of battery statute affect a self-defense claim. Instead, the State primarily asserts that this Court need not address Porter's argument because the prosecutor presented sufficient evidence at trial to disprove Porter's self-defense claim, regardless of whether the trial court applied the correct standard of law.

[21] The trial court was not obligated to explain its judgment or how it weighed witnesses' credibility, and we do not reweigh the evidence or judge witness credibility. Porter's argument presents us with several possible scenarios. If the trial court accepted the prosecutor's legal theory and discounted the evidence relevant to Porter's past abuse, there would be sufficient evidence to support that judgment. The trial court may have also accepted either the prosecutor's or the defendant's legal theory and accepted the evidence relevant to Porter's past abuse but also accepted the State's argument that the evidence did not meet the standard for effects of battery, which would also support the judgment. Finally, Porter's best case is that the court may have accepted Dr. Huffman's testimony, along with the unrebutted evidence that Bohman abused Porter in the past, but

still rejected Porter's self-defense claim based on the prosecutor's erroneous statement of the law. In that case, the judgment would perhaps lack sufficient evidentiary support. But we cannot speculate on the trial court's decision-making based on this silent record. In the end, we must conclude Porter's argument does not provide the "clarity and certainty" required by current precedent to rebut the presumption that the trial court correctly followed the law. *Moran*, 622 N.E.2d at 159-60.

[22] Moreover, the prosecution provided sufficient evidence to rebut Porter's claim of self-defense beyond a reasonable doubt. On the day of the shooting, Bohman did not threaten Porter or his family, and he did not display his handgun. Instead, the two men watched videos in Bohman's apartment for a period of time. Next, Porter went into the bathroom, put in earplugs, drew his gun, and deactivated the safety before going back into the living room to point the gun at Bohman. Although Bohman's history of abusing Porter is relevant to the shooting, there is no evidence that Bohman was about to use unlawful force to inflict serious bodily injury on Porter. It was unreasonable for Porter to initiate the confrontation. *See Butler v. State*, 547 N.E.2d 270, 272 (Ind. 1989) (State presented sufficient evidence to disprove self-defense in murder prosecution; Butler approached victim, drew gun, and shot him without provocation). As a result, any legal error in the trial court's reasoning was harmless. *See Woodford v. State*, 544 N.E.2d 1355, 1358 (Ind. 1989) (any trial court error in relying on documents not admitted into record was harmless; sufficient evidence

supported judgment). Therefore, we must reject Porter's claim that the trial court may have misapplied the law of effects of battery.

## II. Sufficiency of the Evidence – Sudden Heat

[23] Porter argues that the trial court should have determined he was guilty of voluntary manslaughter, not murder, because the State failed to disprove his claim that he shot Bohman under the effect of sudden heat. To obtain a murder conviction as charged, the State was required to prove beyond a reasonable doubt that Porter (1) knowingly (2) killed (3) Bohman. Ind. Code § 35-42-1-1(a) (2018); Appellant's App. Vol. 2, p. 19. If Porter had killed Bohman while acting under sudden heat, the existence of sudden heat would be a "mitigating factor" that would reduce the offense to Level 2 felony voluntary manslaughter. Ind. Code § 35-42-1-3 (2018).

[24] "Sudden heat exists when a defendant is 'provoked by anger, rage, resentment, or terror, to a degree sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection.'" *Brantley v. State*, 91 N.E.3d 566, 572 (Ind. 2018) (quoting *Isom v. State*, 31 N.E.3d 469, 486 (Ind. 2015)). "The issue of whether adequate provocation legally exists is an objective—not a subjective—measure." *Carmack v. State*, 200 N.E.3d 452, 460 (Ind. 2023). Once a defendant places sudden heat into issue, the State bears the burden of negating the presence of that mitigating factor beyond a reasonable doubt. *Griffin v. State*, 963 N.E.2d 685, 689 (Ind. Ct. App. 2012).

[25] "Sufficiency-of-the-evidence arguments invoke a deferential standard of review, in which we neither reweigh the evidence nor judge witness credibility, instead reserving those matters to the province of the jury." *Brantley*, 91 N.E.3d at 570. We consider all the evidence and reasonable inferences supporting the verdict and will affirm the conviction if probative evidence supports each element of the offense beyond a reasonable doubt. *Id.*

[26] The State does not dispute that Bohman had repeatedly threatened Porter in the past. But the last time Bohman said anything that could be construed as threatening was on the night before the shooting, when he told Porter he was "on the edge of killing everybody." Tr. Vol. 2, p. 171. The next morning, Porter purchased a handgun before going to Bohman's apartment. Bohman let Porter in, and the two men watched videos together. Bohman did not threaten Porter or his family, and he did not display his handgun.

[27] After watching videos for a period of time, Porter went to the bathroom, put in earplugs, drew his gun, deactivated the safety, and returned to the living room. He pointed his gun at Bohman and shot him repeatedly, later telling the officers he was nervous and thought that Bohman was reaching for a weapon after he said that he did not want to work for Bohman anymore. No evidence suggests that Porter was provoked into anger or terror sufficient to prevent deliberation at the time that he returned to the living room. *See Jackson v. State*, 709 N.E.2d 326, 329-330 (Ind. 1999) (State presented sufficient evidence to disprove sudden heat; defendant left victim's presence after physical fight to retrieve firearm before returning to shoot victim).

[28] Porter, citing *Brantley*, 91 N.E.3d 566, argues that the trial court should have considered Bohman's prior physical and emotional abuse of Porter in the months leading up to the shooting. He claims that Bohman's repeated abuse leading up to the day of the shooting instilled terror in Porter, which qualifies as sudden heat under *Brantley*. We read *Brantley* differently. In that case, Brantley fatally shot his brother-in-law, Bruce, and was convicted of voluntary manslaughter. The court noted that Brantley had seen Bruce behave violently toward other family members on prior occasions and had intervened in the past to prevent Bruce from harming others. The court added that Brantley knew Bruce kept knives nearby at all times. But the key facts related to sudden heat occurred shortly before the shooting. Specifically, Brantley returned to the home he shared with Bruce and Bruce's wife, his sister, and he determined that they had been arguing. Bruce continued to be irate, would not calm down, and physically prevented his wife from leaving the room where the three were talking. When Bruce angrily stood up with a shiny object in his hand and threatened to fix all of his problems immediately, Brantley shot him. The Supreme Court concluded the events immediately before the killing sufficiently established sudden heat.

[29] By contrast, in Porter's case, there is no evidence of any behavior by Bohman on the day of the shooting that could have given rise to sudden heat. He did not threaten Porter or Porter's family and was not visibly angry. Unlike in *Brantley*, the evidence of an immediate provocation is absent. The State presented sufficient evidence to disprove Porter's claim of sudden heat.

## Conclusion

[30] For the reasons stated above, we affirm the judgment of the trial court.

[31] Affirmed.

Pyle, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

Talisha R. Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Alexandria Sons
Deputy Attorney General
Indianapolis, Indiana